Daniel L. G. Frobisher, Respondent, *v.* Fifth Avenue Trans-portation Company (Limited), Appellant.

*Damages for personal injuries — contributory negligence as a matter of law — allegation as to special damages — construction of the steps of a stage — city ordinance forbidding its stopping on crosswalks.*

The fact that a person attempted to enter a stage drawn by horses on the streets of a city, while it was in motion, where the driver thereof had nearly stopped the stage, and its motion was hardly perceptible when such person attempted to board the same, does not of itself constitute contributory negligence as a matter of law.

In an action brought to recover damages for personal injuries, sustained by the plaintiff in slipping through the step of a stage owned and operated by the defendant, it is proper to submit to the jury, upon contradictory testimony, the questions whether the defendant was negligent in using a step upon its stages drawn by horses along the streets of a city, without a riser or back, and whether the driver of the stage was negligent in not stopping the stage so as to permit the plaintiff to enter, and in starting it suddenly when he was on the step.

The ordinance of the city of New York, providing that a stage shall not be stopped at the intersection of streets so as to obstruct passage on any sidewalk or in the street, is not intended to apply in case it should be necessary to stop a stage in order to save life or prevent a collision or the infliction of an injury to a person.

The mere fact that a person fell or was thrown from the step of a stage, thereby sustaining personal injuries, does not, of itself, raise the presumption that the step was defectively constructed, but if there be evidence that a step differently constructed was in use upon other stages at the time of the accident, and that the accident could not have happened if such a step had been used on the stage in question, it is proper for the court to refuse to charge, as a matter of law, that there was no evidence that the step was defective, and

the question as to whether or not its construction was defective is one of fact, and as such is properly left for the determination of the jury. (VAN BRUNT, P. J., dissenting.)

In an action brought to recover damages for personal injuries sustained by the plaintiff, by reason of the alleged negligence of the defendant, the complaint contained an allegation that the plaintiff "has become disabled for life to such an extent as to seriously interfere with the active prosecution of his business."

*Held,* that such allegation was sufficient to give the defendant notice that an attempt would be made to recover special damages; that if the defendant had desired a more definite allegation it should have moved that the complaint be made more definite and certain;

That the plaintiff was properly permitted, upon the trial of the action, to show the amount of his yearly income from his business prior to his injury.

APPEAL by the defendant, The Fifth Avenue Transportation Company (Limited), from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 18th day of June, 1894, upon the verdict of a jury rendered after a trial at the New York Circuit, and also from an order entered in said clerk's office on the 18th day of June, 1894, denying the defendant's motion for a new trial made upon the minutes.

*William Irwin,* for the appellant.

*J. Tredwell Richards,* for the respondent.

FOLLETT, J.:

This action was brought to recover damages arising from a personal injury caused, it is alleged, by the negligence of the defendant and of its servants.

The defendant did not move for a nonsuit, or that a verdict be directed in its favor, and the only questions presented are those raised by the exceptions taken to the admission and exclusion of evidence, to the charge and to the refusals to charge.

On the 14th of October 1889, the plaintiff, while attempting to enter one of defendant's stages, fell from the step, breaking the radius of his left arm near the wrist and dislocating his left shoulder. The step was an open one, having no back or riser, and it is alleged that the defendant was negligent in not using one with a riser or back which would have rendered it impossible for the foot of a pas-

senger to slip forward from and beyond the step. It is also alleged that the driver was negligent in not coming to a full stop when the plaintiff attempted to enter the stage, in starting suddenly while he was on the step, and in dragging him so far after he fell. The stage was going up town. The plaintiff was standing on the west side of Fifth avenue, near the corner of Twenty-third street. He testified that he signaled the driver that he wished to ride, who recognized him and pulled up his horses, but did not come to a full stop. He said that when he attempted to enter the stage its motion was hardly perceptible; that he took hold of the brace or handle at the right of the door with his right hand, and was standing on the step when the stage " started up with a big jerk," throwing him violently backwards; that his left foot slipped over the step and caught; that he fell, and was dragged at least seventy-five feet, and over the tracks of the Twenty-third street railroad.

The driver of the stage had died before the trial, and the plaintiff's evidence as to the manner in which he attempted to enter the stage was not contradicted. One of the defendant's employees testified that when the stage was between the south crossing at Twenty-third street and the track of the Twenty-third street railroad the plaintiff ran forward and got on the step and was caught by his foot and dragged about ten feet; that at the time the stage was in motion; the driver was walking his horses across Twenty-third street He did not know whether the plaintiff had signaled the driver lower down.

Frost, a policeman called by the defendant, testified that he saw the plaintiff get on the step of the stage when it was south of the Twenty-third street crossing. " He got on below that. I had seen him getting on. I saw him step on the stage after it started. He pulled on the door until he put his foot through, slipped through; I presume he went through anyway — Q. Was the stage at that time in motion or stationary when he got on? A. In motion. It was not standing still." The witness said that the plaintiff was dragged fifteen or twenty feet.

The evidence that the plaintiff attempted to enter the stage after having signaled the driver to stop and before it reached the crossing while it was moving slowly, is quite sufficient to warrant the jury in finding those facts. The defendant insists that the plaintiff was

negligent, as a matter of law, in attempting to enter the stage while it was in motion, and that the court erred in refusing so to charge. If it be true, as testified by the plaintiff, that the driver had nearly stopped the stage and that its motion was hardly perceptible, we do not think that under such circumstances it could be held as a matter of law that the plaintiff was guilty of contributory negligence in attempting to enter the stage.

There was evidence that the stages and coaches used by others have steps with risers or backs protecting the passengers from the danger of slipping forward from the step. Whether the defendant was negligent in the use of a step without a riser or back, and whether its driver was negligent in not stopping the stage so as to permit the plaintiff to enter, and in starting it suddenly when he was on the step, were issues fairly submitted to the jury by the court in its charge, and they found for the plaintiff.

The defendant asked the court to charge that it was not negligence on the part of the defendant or its servants not to stop the stage in Twenty-third street where it crosses Fifth avenue. The court refused to express any opinion on that question. There is no evidence tending to show that the plaintiff asked the driver to stop the stage after it had passed the south line of Twenty-third street. The only complaint made in respect to the driver's not stopping the stage before crossing Twenty-third street, is that after the plaintiff was caught it should have been stopped before dragging him across the tracks of the Twenty-third street railroad.

It was shown that the ordinances of the city forbid that a stage be stopped at the intersection of streets so as to obstruct passage on any sidewalk or in the street. This ordinance, however, was not intended to apply in case it should be necessary to stop in order to save life, prevent a collision, or the infliction of an injury to persons.

The defendant requested the court to charge:

" 9. That there is no proof that the step of the stage, or the stage itself, was in any way defective."

" The Court: You have the evidence in regard to what might have been done with known appliances with respect to the step." [Defendant excepts.]

By this request the court was asked to rule, as a question of law, that there was no evidence that the stage or its step was in any way

defective. It was not asserted by the plaintiff that any part of the stage was defective except the step. The plaintiff's foot slipped over and beyond the step and was caught, and he fell and was dragged by the moving stage and was injured.

Undoubtedly, the mere happening of the accident did not raise a presumption that the step was defectively constructed. But there was more evidence. Mulholland, who had been connected with the Stephenson Car Factory of this city for thirty-four years, was sworn in behalf of the plaintiff, and testified : " Q. Has that company been building for use stages with solid backs to steps ? A. They have built steps with solid backs; yes, sir. Q. Steps with solid backs ? A. Yes, sir. Q. During the period you have been in business ? A. They have ; yes, sir. Q. And which steps are known in the trade,. are they ? A. This step is known in the trade ; yes, sir. Q. Step with a solid back ? A. Yes, sir. Q. And was known in 1889 and the fall of that year ? A. We have built some since that. Q. At that time it was well known as a form of construction, was it not ? A. This was one of the forms of construction ; yes, sir. Q. Apart from the diagram, steps with solid backs were well known as a form of construction ? A. Not apart from this. Q. I mean without looking at the diagram (of a closed step) you, in your own memory, know that steps to stages having solid backs were a well-known form of construction in the trade ? A. Yes, sir.

" Cross-examined by Mr. Irwin : Q. Were those the only kind of steps built ? A. No, sir ; it is not. Q. Were there not some without a solid back ? A. Yes, sir. Q. Were they very generally used ? A. In a few cases we had an open step, what we call an open step. Q. With rubber on the step, or without it ? A. Well, without the rubber. Q. And those were used in other form of stages ? A. Yes, sir. Q. Just as general as the solid back ones ? A. This is known as a stage step, the other is something new ; that is the open step made for large cities. Q. The open step ? A. Yes, sir ; the first that was made, I believe, was for Baltimore ; they were used in the city of Baltimore. Q. And the open step, you say, was made for large cities ? A. Had been made for the city of Baltimore ; that is a pretty large city. Q. And have been used in this city ? A. I have seen them in the city ; yes, sir."

Hall, a car and stage builder, sworn for the defendant, testified

that the step in use on that stage was the kind usually used, and that in his opinion it was safe and convenient. On the cross-examination he testified: " Q.   *   *   *   Wouldn't a solid back or riser to the step prevent the foot from going through and catching under the step there — is there any way in which the foot could get through that step, if there was a solid back to it? A. No, not if there was a solid back there ; I never saw a stage with a solid back to its step; I never heard of one except these hotel coaches, they are inclosed all in. Q. You have seen stages that have solid backs to the steps? A. Yes, but not on an ordinary vehicle."

Under this state of the evidence it was not error for the court to refuse to rule, as a matter of law, that there was no evidence that the step was defective, and the question was properly left as one of fact to the jury.

There is but a single exception to the admission of evidence that is deserving of discussion. The plaintiff was asked: "What was your income a year, prior to this injury, from your business? [Objected to upon the ground that there is no allegation of special damage in the complaint. Objection overruled. Exception.]"

It is alleged in the complaint that the plaintiff "has become disabled for life to such an extent as to seriously interfere with the active prosecution of his business." This is certainly not a very specific allegation of special damages resulting from an injury to the plaintiff's business, but it was sufficient to give defendant notice that an attempt would be made to recover such damages, and if it had desired a more definite allegation it should have moved that the complaint be made more definite and certain in this particular. (*Ehrgott* v. *Mayor*, 96 N. Y. 264.) The damages awarded in this case were not very large, and it can hardly be asserted that much, if anything, was awarded to the plaintiff for loss of business.

The judgment and order should be affirmed, with costs.

PARKER, J., concurred.

VAN BRUNT, P. J. (dissenting):

I cannot concur in the conclusion arrived at by Mr. Justice FOLLETT as to the questions raised by this appeal. It seems to me that it was clear error for the court to refuse to charge that there was no proof that the step of the stage was in any way defective. This

error was accentuated by the reply of the court to the request. He said to the jury: " You have the evidence in regard to what might have been done with known appliances with respect to the stage," thereby charging the jury that if there were any known appliances which might possibly have made this stage safer, in view of the knowledge obtained from the happening of this accident, the defendant was guilty of negligence, thus presenting a rule of diligence for which I have been unable to find any precedent and for which no authority is claimed by the respondent. The evidence was conclusive, even according to the testimony of the plaintiff's witness on this subject, that this was an ordinary mode of construction. It is true he testifies that there were other modes of construction by which the back of the step was filled in, but it is not contended that that mode of construction was adopted for the purpose of meeting results such as were produced in the case at bar. It is probably true that the plaintiff might not have been so severely injured had this step had a solid back, but there is no particle of evidence that any accident of this kind had ever happened before.

Under the rule as settled by a large number of cases, of which the following are merely samples, where an appliance has been used for a considerable length of time and has not been found defective and no accident has happened in consequence of it, it is not negligent to continue its use. (*Lafflin* v. *Buffalo & S. W. R. R. Co.,* 106 N. Y. 136 ; *Crocheron* v. *North Shore Staten Island Ferry Co.,* 56 id. 656 ; *Loftus* v. *Union Ferry Co.,* 84 id. 455 ; *Tonkins* v. *N. Y. Ferry Co.,* 47 Hun, 562.) The establishment of any other rule would be requiring of transportation companies a measure of diligence with which it would be almost impossible for them to comply.

It is undoubtedly true that the expert witness Mulholland testifies that steps with risers or solid backs was a well-known mode of construction in building stages at that time. But he also testifies that these were not the only kind of steps built; that open steps were used in other forms of stages ; that the closed step was something new, and that open steps were made for large cities. Without considering the testimony upon the part of the defendant in this respect, it is clear that the stage in question was built after the ordinary manner of construction, and that the jury had no right to find,

as they were virtually directed to do, that the defendant was negligent because of this method of construction.

The judgment should be reversed and a new trial ordered, with costs to appellant to abide the event.

Judgment and order affirmed, with costs.