[No. 3927. Decided October 9, 1901.]

ALBERT M. BIRKEL, *Respondent*, v. B. C. CHANDLER, *Appellant*.

26 241
28 431
26 241
29 136

PERSONAL INJURIES TO MINOR CHILD — ACTION FOR LOSS OF SERVICES —
EVIDENCE — MENTAL CONDITION.

In an action by a father to recover for loss of services of his minor child resulting from personal injuries caused by defendant's negligence, testimony of a physician as to such minor's mental condition occasioned by such injuries is admissible as a proper subject for consideration in determining his future earning capacity.

SAME — EXTENT OF INJURIES.

The testimony of the mother of a minor child, who had been injured through defendant's negligence, as to his condition when she first saw him shortly after he was hurt, is admissible in an action to recover for loss of his services, for the purpose of showing the jury the nature and extent of his injuries.

SAME — VALUE OF SERVICES.

In an action for loss of services of a minor child his mother is competent to testify as to the value of his past earnings and also as to what they would be worth as he advanced in years, since the value of the minor's earning power is not a subject to be settled by expert testimony.

SAME.

In an action for loss of services of a minor child, evidence as to the cost and expense of keeping him in school and of clothing him is not admissible for the purpose of reducing defendant's liability for the full value of such services.

SAME — CROSS-EXAMINATION.

Where a witness has testified that she knew the value of the services of her minor child, in an action for their loss, it is not error to admit her testimony as to what the value was prior to permitting adverse counsel to cross examine her as to her sources of knowledge, since that is a matter that might be developed on her general cross-examination.

NEGLIGENCE — QUESTION FOR JURY.

Defendant is not entitled to a non-suit in an action for damages as the result of his negligence, whereby personal in-

16—26 WASH.

juries were caused by heavy planks slipping from the noose by which they were held while being lowered from a high building, although the evidence tends to show that the accident was due to the careless manner in which the knot was tied around the planks and that this had been done by parties for whom defendant was not responsible, when on the other hand there is evidence showing that defendant was superintending the lowering of the planks, and that the knot became loosened by reason of the manner in which the planks were permitted to strike against intervening telephone wires.

JOINT TORT FEASORS — SETTING ASIDE VERDICT AGAINST ONE — EFFECT UPON LIABILITY OF OTHERS.

The action of the court in setting aside a verdict and dismissing an action against one of two joint tort feasors cannot be urged as error by the other defendant, since each tort feasor is severally liable for the whole damage.

Appeal from Superior Court, King County.—Hon. ORANGE JACOBS, Judge. Affirmed.

*Tucker· & Hyland*, for appellant.

*James M. Epler*, for respondent.

The opinion of the court was delivered by

HADLEY, J.—This action was brought by respondent to recover for loss of the services of his son, Clifford Birkel, a minor of the age of fourteen years, because of personal injuries received by said minor. On the 14th day of November, 1898, the Mutual Life Insurance Company of New York was the owner of a building situated in the city of Seattle known as the "Mutual Life Building," and had placed on and attached to said building a wooden beam, and to said beam a snail for the purpose of holding and fastening block and tackle to be used in carrying into said building safes and other heavy articles. Appellant, Chandler, is a professional safe mover, and is the owner of trucks, horses, pulleys, tackle, and other

necessary appliances ordinarily used in the moving of
safes.   On the said date the law firm of Humphries,
Humphrey & Bostwick employed one Heath to remove
their office furniture from what is known as the "Sulli-
van Building," in the city of Seattle, to an upper floor
of the said Mutual Life building.   The said Heath em-
ployed appellant, Chandler, to remove the safe belong-
ing to said firm.   The safe was hoisted into said building
by means of said beam and snail and by ropes and pulleys
thereto attached.   Some heavy planks sixteen feet long,
twelve inches wide and four inches thick had been hoisted,
and used for the purpose of rolling said safe from the win-
dow where it was taken into the building.   An effort was
made to lower these planks to the street by means of the
hoisting appliances above mentioned.   A rope was tied
around the planks and was also attached to a windlass sit-
uated upon a wagon below.   The planks thus held were being
lowered by unwinding the rope from the windlass below.
Chandler was at the time standing upon the wagon, and, if
not actually assisting in turning the windlass, was at
least giving general directions to those engaged in lower-
ing the planks.   A small guide rope was attached to the
larger one which held the planks, said guide rope swing-
ing down to the street below.   Calligan, a friend of
Chandler, but not employed by him to assist in the work,
happened to be standing near, and, as the planks de-
scended, Chandler asked Calligan to take the guide rope
for the purpose of swinging the planks clear of the win-
dows of the building and other obstructions in the way
of their descent.   Calligan accordingly took and held the
guide rope, and was endeavoring to guide the planks so
that their descent would not be obstructed.   While all
were thus engaged, the planks were lodged against some
telegraph or telephone wires, and while they were en-

deavoring to free them from the wires they slipped
through the noose in the rope by which they were held,
and fell to the street below. The boy Clifford Birkel
happened to be passing along the street at the time, and
the planks fell in such a manner that they struck him,
and he thereby received serious personal injuries. It is
alleged that he was struck on his head, on his side, and
on his leg, from which concussion of the brain resulted,
two ribs were broken, and his feet badly bruised and in-
jured; that to so great and alarming an extent was he
injured that he was unconscious for the period of eighteen
hours, was confined to his bed for the space of four weeks,
is still suffering from the effects of said injuries, and will
continue to suffer for a long period of time; that said in-
juries are permanent, and will cause a life time injury,—
whereby the father, respondent here, was deprived of the
services of his said son. The action was brought against
the Mutual Life Insurance Company, Chandler, and Cal-
ligan. The several defendants answered separately. The
Mutual Life Insurance Company admitted its ownership
of the building, and that it had caused the beam and snail
heretofore mentioned to be attached to the building for
hoisting purposes, but claimed that said appliances were
secure, and answered the purpose for which they were in-
tended, and that, if the boy Clifford Birkel had received
injuries, they were wholly due to the carelessness of oth-
ers, with whom said company was in no way connected,
and for whose acts it was not responsible. Chandler an-
swered that he was employed by Heath to transport the
safe, and that any acts or things done at the time were
done, ordered, and directed by said Heath; that he (Chan-
dler) had no knowledge or information as to what direc-
tions Heath gave others, but that in moving the safe his
own acts were done under the direct supervision and con-

trol of Heath. Calligan answered that he was not employed bv Chandler, Heath, or any other person, and was in no way interested ·in the matter. The answers of Chandler and Calligan each charged the said Clifford Birkel with contributory negligence. A trial was had before a jury. At the close of the plaintiff's testimony each of the defendants moved the court for judgment of non-suit. The motion was granted as to the Mutual Life Insurance Company, but denied as to Chandler and Calligan. After the testimony of defendants had been introduced, the cause was, under instructions from the court, submitted to the jury as against Chandler and Calligan, and thereafter a verdict was returned in favor of the respondent for $2,000. Thereupon both Chandler and Calligan moved the court to set aside the verdict and to grant a new trial. The motion to set aside the verdict as to Calligan was granted, and judgment against him was arrested, but the entire motion was denied as to Chandler. Thereafter the court dismissed the action as to Calligan, and entered judgment upon the verdict against Chandler for $2,000 and costs. From said judgment Chandler has appealed.

It is assigned as error that the court permitted Dr. Gibson to testify concerning injuries to the mind of Clifford Birkel. Counsel correctly state that the rule as to the measure of damages in this case is limited to the earning capacity of the minor, except that it includes in addition thereto the necessary expenses for nursing, medicines, and physicians' charges in the effort to cure the minor. We think it is manifest, however, that the mental condition of the minor as a consequence of his injuries is a proper subject for consideration in determining his future earning capacity. The testimony was properly admitted.

It is urged as error that the court admitted the testimony of Mrs. Birkel, the mother of Clifford Birkel, concerning his condition when she first saw him a short time after he was hurt; it being contended that the evidence should have been confined to the one question of the earning capacity of the boy, and that the testimony of the mother as to his condition had only the effect to appeal to the sympathy of the jury, and was not material testimony. We think the testimony was proper for the purpose of showing the jury the nature and extent of the injuries. It is true, the surgeon in charge also testified upon the same subject, and, while the extent of injuries is usually shown by the testimony of physicians and surgeons, yet we know of no rule that limits such testimony to that class of witnesses. The testimony of others who have actual knowledge of the injuries may be received, and weighed by the jury for what it is worth. It was necessary that the jury should be advised of the condition of the boy immediately following the accident, and also of the probable consequences, in order to estimate intelligently the effect upon his earning capacity.

It is urged as error that the court did not allow counsel to cross-examine Mrs. Birkel as to her competency to testify concerning the earnings of Clifford Birkel and the value of his services. The witness was asked if she knew the value of the services, and answered that she did. Counsel then sought to cross-examine her as to her sources of knowledge before she testified as to the value of the services. This the court refused, stating to counsel at the time that he could cross-examine the witness upon that subject when he entered upon his general cross-examination. We think the court was right. The witness, having stated that she knew the value of the services, was then competent to state what it was. Upon general cross-

examination as to the sources of her knowledge the jury would then weigh the value of her testimony in connection with her knowledge as shown. It is true, the court, in its discretion, might have permitted the cross-examination before she testified as to the value, following the rule that is usually adopted in the case of expert witnesses. But, in any event, it was not error to refuse it. It would have been error to treat this subject of the value of earning power as one to be settled by expert testimony. *Goodhart v. Pennsylvania R. R. Co.,* 177 Pa. St. 1 (35 Atl. 191, 56 Am. St. Rep. 705).

The court in the opinion in the above case says:

"It was also error to treat this subject of the value of earning power as one to be settled by expert testimony. An expert in banking or merchandizing might form an opinion about what a man possessing given business qualifications ought to be able to earn, but this is not the question the jury is to determine. They are interested only in knowing what he did actually earn, or what his services were reasonably worth, prior to the time of his injury. In settling this question they should consider not only his past earnings, or the fair value of services such as he was able to render, but his age, state of health, business habits, and manner of living. *McHugh v. Schlosser,* 159 Pa. St. 480. The basis on which this calculation must rest is not the possibility, as judged of by the expert witness, but the cold, commonplace facts as proved by those who knew them."

Another element, however, enters into a case of the kind now before the court. This was a growing boy, who was far from having reached his maturity. The jury were therefore not only interested to know what his past earnings were, but also what his services would have been worth as he advanced toward maturity. This witness testified as to the fact of his past earnings, and also as to what they would have been worth as he advanced

in years. Having stated in advance that she knew these facts, respondent was then entitled to her testimony concerning them, and appellant could have followed with a general and searching cross-examination.

It is next assigned as error that the court refused permission to cross-examine Mrs. Birkel as to the cost and expense of keeping the boy Clifford Birkel in school, and also as to the cost of clothing him. We think this was not error. The obligation rests upon the father to maintain the son after his injury as fully as it did before. The father is entitled to the services of the son because of that obligation. He is, therefore, entitled to recover the full value of his son's services during his minority. *H. & G. N. R. R. Co. v. Miller,* 49 Tex. 322; *State v. Baltimore, etc., R. R. Co.,* 24 Md. 84 (87 Am. Dec. 600); *Caldwell v. Brown,* 53 Pa. St. 453; *Black v. Carrolton R. R. Co.,* 10 La. An. 33 (63 Am. Dec. 586); *Ford v. Monroe,* 20 Wend. 210.

It is urged that the court erred in denying appellant Chandler's motion for non-suit. It is claimed that the evidence shows the accident due entirely to the careless manner in which the knot was tied around the planks; that the knot was tied by Heath, or under his immediate direction; and that Chandler, who was down in the street, in no way assisted in tying the knot. There was evidence introduced by respondent, however, to the effect that the noose which held the planks was loosened by the manner in which the planks were permitted to strike the wires, and that, if the planks had been kept clear of obstructions, the noose would have held them securely until they reached the ground. It was, under this testimony, proper to submit to the jury the question whether Chandler was guilty of negligence, inasmuch as it clearly appeared that he

was assisting in lowering the planks. The motion for non-suit as to Chandler was properly denied.

Many errors are assigned upon the instructions given by the court, and upon the court's refusal to give certain instructions requested by appellant. To review them all would require much space, and, since we believe the instructions that were given fairly state the law applicable to this case, we will not enter upon a discussion of the errors assigned thereon. We are unable to find that appellant was prejudiced by the instructions given or by the refusal to give others as requested.

It is further urged as error that the court denied appellant's motion for a new trial, and entered judgment against him. As heretofore stated, the court did set aside the verdict as to Calligan, and arrested judgment and dismissed the action as to him. It is now contended by Chandler that it was error not to vacate the verdict as to him, since it was vacated as to Calligan. It is urged that, the verdict having been rendered against the two, the judgment must follow the verdict. Counsel cite the case of *Boor v. Lowrey,* 103 Ind. 468 (3 N. E. 151, 53 Am. Rep. 519). That was an action brought against two physicians, who were partners in business, for damages sustained through malpractice. Pending the action, one of the defendants died. An administrator was appointed and substituted as a co-defendant with the surviving partner. The case proceeded to verdict and judgment against both. A motion was made to arrest the judgment on the ground that the action had been abated as to the deceased partner. It was held on appeal that the action had abated as to one of two defendants, and, since the verdict was rendered against both jointly, it was error to render judgment thereon over a motion in arrest of judgment. The

court observed, in the course of the opinion, that it was not prepared to hold, upon the record as it came before the court, that the death of one of the partners had the effect to abate the action as to both; and, further, that ordinarily torts are joint and several, each tort-feasor who is shown to have participated in the wrong being liable for the whole damage. The opinion, at page 156, further contains the following:

"The action having been prosecuted jointly against the administrator of the deceased partner and the surviving partner, and a joint verdict having been returned against both, since the action had abated as respects the one, no judgment could rightfully be rendered on such verdict, over a motion in arrest against both, even if it could have been, at the plaintiff's election, against the survivor."

It was thus intimated that judgment might, at the plaintiff's election, even in that case, have been entered against the surviving defendant; but it was held that, inasmuch as the judgment was rendered against both, it was erroneous, and was for that reason reversed. Counsel also cite in this connection the following cases: *Morsch v. Besack,* 52 Neb. 502 (72 N. W. 953); *Kellogg, Johnson & Co. v. Gilman,* 3 N. Dak. 538 (58 N. W. 339).

Those were, however, both actions founded upon contract, and not subject to the same rules which apply to this case, since this action is founded upon tort. The case of *George v. Belk,* 101 Tenn. 625 (49 S. W. 748), is cited in support of the contention that the judgment must follow the verdict. In that case a verdict was first returned that the defendant should pay the costs, and plaintiff should recover one dollar. Upon the suggestion of counsel that the jury were evidently laboring under a misapprehension on the subject of costs, the court instructed the jury that they had nothing to do with the

costs, and that a verdict for $5 or less would not fix the costs upon defendant. The jury then retired, and after a short time, returned with a verdict in favor of plaintiff for $6. The verdict was received, and the jury discharged. Afterwards the court rejected the last verdict, and rendered judgment on the first for one dollar, eliminating the costs. This was held to be error. The verdict which was finally returned being for $6, the judgment should have been entered for that sum. The point involved in that case, however, is wholly unlike the question presented here, and none of the above cases seem to cover the principles involved in a case of this kind. Appellant's counsel also cite *Palmer v. Crosby*, 1 Blackf. 138. The opinion in that case was rendered by Mr. Justice BLACKFORD, one of the ablest jurists of his time, and seems to us to be so clearly opposed to counsel's contention that we quote from the opinion below. The case was an action of trespass against six persons for assault and battery. But four of the six were served with process, and the cause proceeded to trial against the four. It was contended on appeal that the plaintiff should have sued out further process against those upon whom process had not been served before he proceeded against the others. After discussing the principles that would have applied if the action had been one founded upon contract, the learned jurist said:

"But the law is very different in actions founded on tort. The persons guilty are separately liable to the party injured, and he has a right to sue one, or all, or any number of them. 1 Will. Saund. 291, n. 4. If the plaintiff commence suit against several, he may, at any time before judgment, enter a *nolle prosequi* as to any of them. Even after a joint plea in an action of trespass, and after a verdict that the defendants are jointly guilty, the plaintiff may enter a *nolle prosequi* as to some, and take judgment against the others. 1 Will. Saund. 207, n. 2. The

case before us is one of assault and battery, in which the writ was served on, and the judgment entered against, four only of the six persons against whom the plaintiff complained. Why is this wrong? As the action might have been originally instituted against these four, so, at any time before final judgment, the plaintiff might elect to take his damages against them alone, and abandon his action against the others. He might, even after his verdict against the four, have entered a *nolle prosequi* as to two, and taken judgment only against the rest."

The above statement of principles seems to us to be peculiarly applicable to this case. If plaintiff himself can, after verdict, enter a dismissal as to any one of the defendants in an action for tort, and elect to take judgment against the remaining defendants, certainly, when the court itself has entered such dismissal, the plaintiff can elect to accept judgment against the others, as was done in this case. Each defendant who participated in the wrong being liable for the whole damage; we do not see that any one can complain here except the respondent, who was plaintiff in the action. The respondent accepts the judgment, and makes no complaint.

We think there was clearly sufficient evidence upon which to found the verdict, and, since we find no material error, the judgment is affirmed.

REAVIS, C. J., and FULLERTON, DUNBAR, ANDERS and MOUNT, JJ., concur.