[Sac. No. 1737.   Department One.—January 25, 1910.]

## J. H. SHAW, Respondent, v. SOUTHERN PACIFIC RAILROAD COMPANY, and SOUTHERN PACIFIC COMPANY, Appellants.

Negligence—Damages—Loss of Profits—Pleading.—In an action to recover for personal injuries caused by negligence, damages from loss of profits the plaintiff would have made if he had continued in the business in which he was engaged prior to the injury are special

in their nature, and the facts must be particularly alleged in order to admit evidence thereof and justify a recovery therefor.

ID.—ALLEGATION OF GENERAL DAMAGE—EVIDENCE OF COMPARATIVE GAINS FROM BUSINESS BEFORE AND AFTER INJURY—INSTRUCTIONS.—In such action, under general allegations of personal injuries, the jury are authorized to consider the permanent loss to the plaintiff from the fact that the injury renders him less capable than before of doing the business in which he was previously engaged, and in proof of such loss, evidence is admissible as to the relative gains from the business formerly carried on and that subsequently conducted by him. In such a case, however, the jury should be instructed that no allowance as damages can be made for the specific loss of profits that may be disclosed by the evidence of the comparative gains before and after the injury.

ID.—EXCESSIVE DAMAGES—REVIEW OF JUDGMENT ON APPEAL.—In an action for personal injuries, a judgment for the plaintiff will be reversed on the ground that the damages awarded are excessive, only when it appears that the amount allowed is so plainly unjust and oppressive as to suggest passion, prejudice, or corruption on the part of the jury. In view of the evidence, the damages awarded in the present case are not excessive.

APPEAL from a judgment of the Superior Court of Tulare County and from an order refusing a new trial. W. B. Wallace, Judge.

The facts are stated in the opinion of the court.

Power & McFadzean, for Appellants.

Lamberson & Lamberson, and H. T. Miller, for Respondent.

SHAW, J.—This is an action for damages for bodily injuries to the plaintiff, alleged to have been caused by the negligence of the defendants. The defendants appeal from the judgment and from an order denying their motion for a new trial.

The complaint alleges that by reason of the improper and negligent operation of its cars by the employees of the defendants, while the plaintiff was lawfully in one of its freight cars occupied in loading the same with boxes of grapes, the said boxes were caused to fall upon the plaintiff, "crushing, bruising and wounding him," and that "by reason of said injuries plaintiff has become and is unable to do or perform any labor, and has become sick, bruised, sore and disabled, . . . and has suffered and is now suffering great bodily and physical pain,

. . . and has been permanently crippled and will continue to suffer from said injuries during the remainder of his lifetime." The damages thus caused are alleged to be in the sum of ten thousand dollars.

Upon the trial the plaintiff testified that before the accident his physical condition was good and that he was able to do the work.that he was engaged in doing, and all parts of it. Over the objection of the defendants he was then permitted to testify that his business was that of loading railroad cars with fruit, doing the work by contract on a large scale and having from ten to twenty-five men in his service, that he was a good hand at the work, that prior to the injury he was able to give his full time to the work and to do all parts of it himself and made from one hundred and fifty dollars to three hundred dollars a month on his contracts, that after the injury he did not make any money out of it because he was unable to superintend it correctly and do the work, that he was now working on a salary of from eighty dollars to one hundred dollars a month, and that if he was able to perform labor as before he could get a larger salary.

If this evidence had been allowed to go to the jury for the purpose of establishing, as the measure of the damages to the plaintiff, the loss of the profits he would have made if he had continued in the business in which he was engaged prior to the injury, it would have been outside of the issues. A loss of profits does not always result from such an injury. Damages from such loss of profits are special in their nature and the facts must be particularly alleged in order to admit evidence thereof and justify a recovery therefor. (*Treadwell* v. *Whittier*, 80 Cal. 579, [13 Am. St. Rep. 175, 22 Pac. 266].) The complaint does not allege a loss of profits. The allegation is merely that he was rendered unable to labor and was permanently crippled.

But the evidence was properly submitted to the consideration of the jury for a different purpose. In *Treadwell* v. *Whittier*, 80 Cal. 579, [13 Am. St. Rep. 175, 22 Pac. 266], the allegation was similar, although not so specific. It was there decided that it was proper to instruct the jury to consider the loss arising from the fact that the injury received rendered the plaintiff less capable of attending to his business than before, and that such loss was not special damage, but was

provable and recoverable under general allegations of permanent disability. It is practically conceded in the case at bar that under such allegations it would be proper to prove the business or occupation in which the plaintiff had been previously engaged, and its nature, and that the injury rendered him less capable, or wholly incapable, of continuing such occupation or business. The authorities are in practical unanimity to that extent. The real point of the objection, therefore, is, that while the jury may consider the work the plaintiff previously did and was able to do, or the business he was able to and did carry on, they may consider it only in a general way, and that when they come to determine what his financial loss has been from the deprivation of his former bodily ability and vigor, they must rely on their common knowledge as to the value of such occupation or business, to a man of his strength and capacity, and that they cannot have the aid which would come from proof of the amounts he had been accustomed to receive therefrom. Evidence of what a plaintiff had usually earned before his injury, either as wages, or in business on his own account, would be the most accurate, satisfactory, and valuable data from which to determine the value of the time and labor he has lost by being rendered unable to continue such occupation or business. For example, if he had previously made five thousand dollars a year by his personal efforts, and afterwards by reason of his injury could make no more than one thousand dollars, his damage from the deprivation of bodily strength would be much greater than if he had previously been able to make only two thousand dollars a year. The rule contended for would drive the jury from the actual facts of the case to their own surmises and experience as a criterion for decision as to the value of his time and labor. The authorities sanction the more accurate method. In *Chicago, etc. Ry. Co.* v. *Posten,* 59 Kan. 453, [53 Pac. 466], the court says: "In order that the jury may intelligently estimate the loss the plaintiff has sustained, it is necessary that they should be informed with reference to his business affairs, and while they may not, as compensation for the loss of his time, include speculative profits, or profits on invested capital, it is for them to say what loss has resulted to his business because of his being incapacitated from attending to it, and to award him as damages the value of his time and labor to himself in

the transaction of his own business. This is the same compensation, and for precisely the same reasons, that a clerk or agent doing the same work for wages might recover for his loss." In *International etc. Ry. Co.* v. *Irvine*, 64 Tex. 533, the court says: "If the hand of a carpenter or other mechanic be cut off by the negligence of another, it would surely be admissible, in an action to recover damages therefor, for him to state what his business was, what he was accustomed to make in its pursuit, and the effect which the hurt had upon his capacity to pursue that business." And it was said that the same rule applied where plaintiff was in mercantile business on his own account, in order "to show how far the hurt had disabled him to follow his ordinary occupation." In *New Jersey Co.* v. *Nichols,* 33 N. J. L. 437, [97 Am. Dec. 722], upon this question the opinion declares that "evidence of the nature and extent of the plaintiff's business and the general rate of profit he has realized therefrom, which has been interrupted by the defendant's wrongful act, is properly received, not on the ground of its furnishing a measure of damages to be adopted by the jury, but to be taken into consideration by the jury to guide them in the exercise of that discretion which, to a certain extent, is always vested in the jury." In Sedgwick on Damages, section 180, the rule is thus stated: "The most trustworthy basis of damages, in such a case, is the amount which the injured party has earned in the past. This is, however, only evidence from which the jury will be enabled to say what the services of such a man as the plaintiff are worth, and the jury should distinctly understand that it is not to be taken as the necessary and legal measure of damages." It is the loss occasioned by the particular man who was injured that is to be ascertained, if possible, and not the loss which an average man would sustain from a similar injury. The standard of an average man is resorted to only where the specific evidence as to the actual loss to the particular man is wanting and where experience teaches that there will be some loss from the injury. The following authorities are of similar effect to those above quoted: *Smith* v. *Chicago & A. Ry. Co.*, 119 Mo. 253, [23 S. W. 785] ; *Schmitz* v. *St. Louis etc. Co.*, 119 Mo. 277, [24 S. W. 472] ; *Bartley* v. *Trorlicht*, 49 Mo. App. 219; *Frobisher* v. *Fifth Ave. T. Co.*, 81 Hun, 544, 30 N. Y. Supp. 1102; *Hamilton* v. *Great Falls etc. Co.*, 17 Mont. 352, [42 Pac. 860, 43 Pac.

713]; *Luck* v. *Ripon,* 52 Wis. 200, [8 N. W. 815]; *Blooming-ton* v. *Chamberlain,* 104 Ill. 268; *Chicago etc. Co.* v. *Meech,* 163 Ill. 314, [45 N. E. 290]; *Chicago etc. Co.* v. *Anderson,* 182 Ill. 298, [55 N. E. 366]; *Wade* v. *Le Roy,* 20 How. 34; *Chats-worth* v. *Rowe,* 166 Ill. 116, [46 N. E. 763]; *North Chicago etc. Co.* v. *Brown,* 178 Ill. 191, 52 N. E. 864]; *Bailey* v. *Center-ville,* 108 Iowa, 20, [78 N. W. 831]; *Falangan* v. *Baltimore & O. R.. Co.,* 83 Iowa, 643, [50 N. W. 60]; *Goodheart* v. *Pennsyl-vania R. Co.,* 177 Pa. St. 1, [55 Am. St. Rep. 705, 35 Atl. 191]; *Birkel* v. *Chandler,* 26 Wash. 241, [66 Pac. 406]; *Ehrgott* v. *Mayor etc. of New York,* 96 N. Y. 276, [48 Am. Rep. 622]; *Central Pacific R. Co.* v. *Senn,* 73 Ga. 709.

It is true that there are many decisions to the contrary, and some of the text-writers say that the contrary decisions are in the majority. But, for the most part, they are based upon the doctrine that under a general allegation of permanent dis-ability to work, evidence cannot be admitted to prove that his disability renders his devotion to his business less profitable to him after the injury than it was before. In this state the rule is, as established in *Treadwell* v. *Whittier,* 80 Cal. 579, [13 Am. St. Rep. 175, 22 Pac. 266], that the jury may, under such general allegations, consider the permanent loss from the fact that the injury renders the plaintiff less capable than before of doing the business in which he was previously en-gaged. If they can consider a loss of this character from partial disability, they can, of course, consider the loss from a disability which renders him wholly unable to carry on his former business and compels him to engage in a business less remunerative. And it would be absurd to say that the jury could consider such loss, and at the time refuse them the aid of any information as to the relative gains from the business formerly carried on and that subsequently conducted, the only facts that would show the actual value, to him, of his time and labor. If the latter were equally or more profit-able, no doubt the defendant would claim, and would be con-ceded, the right to show that fact in mitigation of the damages. In the states where such proof cannot be made unless the loss of business is specially pleaded, the rule is uniform that, where it is pleaded, evidence of the wages received or gains from business, before and after the injury, is admissible. In this state, where such loss of business power may be considered

without having been specially pleaded, it is obvious that the same rule should be applied and evidence of the wages or gains before and after the injury admitted.

The case of *Lombardi* v. *California St. Ry.*, 124 Cal. 311, [56 Pac. 66], is not in conflict with these views. There the plaintiff had specially alleged the amount of the loss by reason of his inability to attend to his business as he formerly did, and that it consisted of a specified sum paid as wages to men working in his place. He offered evidence of special damages from loss of profits in the business which was carried on by himself and a partner in which considerable capital was invested, concerning which there were no allegations. It was held that this evidence was improperly admitted. The court says that the rule stated in *Treadwell* v. *Whittier* was not involved. In the case at bar the plaintiff had no capital invested, nor any partner, and did not plead a special loss of profits.

It is necessary, in all such cases, special damage not being in issue, as stated by Mr. Sedgwick, to direct the jury that no allowance as damages can be made for the specific loss of profits that may be disclosed by the evidence of the comparative gains before and after. This the court did in the present case. The jury was instructed that, in fixing the amount of damages, they could take into consideration the inability of the plaintiff to perform labor, caused by the injuries received from the defendant's negligence, but that they could not "award the plaintiff in this case any damages to compensate him for the loss of his business, trade, or calling." The evidence is received solely for the purpose of enabling the jury to more intelligently estimate the loss occasioned by his incapacity, and not as a basis for the allowance of the particular losses indicated. It is the usual and ordinary previous gains in his usual and ordinary business that are to be considered, and not exceptional or extraordinary profits from particular transactions. The instructions given as above put the matter to the jury in the proper light, and we must presume that it prevented them from allowing a loss of profits as damages, and that they considered the evidence objected to only to determine the plaintiff's damage from loss of earning power.

The appellants also contend that the damages are excessive, to such an extent as to call for the intervention of this court. The injury rendered the plaintiff unconscious for a few

moments.  There was a contraction of the lumbar muscles and a lateral and posterior curvature of the spine.  The contraction turned four of the vertebræ a little to the right.  He was confined indoors for two weeks because of the injury.  He suffered from continuous strong pains in the back which kept him awake and forced him to take opiates at times to enable him to sleep.  He did not attempt to do the work he had previously been able to do, until five months after the accident, and he then found that he could not do it for any length of time.  He attempted it several times afterwards, with the same result, and up to the time of the trial, seventeen months after the injury, he was unable to endure the muscular exertion necessary to successfully carry on his former business or occupation.  At the time of the trial he was still suffering from the injury.  There was at that time general weakness and almost a continuous pain in the back which became very severe after walking or being on his feet for two or three hours.  He was compelled to engage in clerical work, involving only slight muscular exertion, and it was less remunerative than his former business of loading cars.  It may be that the damages given are more than the plaintiff has actually sustained.  This is a question primarily committed to the discretion of the trial court.  The judge of that court is in a much better situation than are we, to determine the question.  It sometimes appears to us from the bare record that probably an excessive verdict has been allowed to stand.  We are frequently asked to interfere in cases which would require us to exercise the broad discretion of the trial court in reviewing the verdict, instead of the circumscribed discretion possessed by the appellate courts.  This we cannot do.  We can reverse a judgment for excessive damages only when it appears that the amount allowed is so plainly unjust and oppressive as to suggest passion, prejudice, or corruption on the part of the jury.  (*Hale* v. *San Bernardino Tr. Co.*, 156 Cal. 713, [106 Pac. 83], and cases cited.)  We do not think that the case demands our interference.

The judgment and order are affirmed.

Angellotti, J., and Sloss, J., concurred.