[No. 12974.    Department One.    May 12, 1916.]

EMORY F. SHAFER, *Appellant*, v. TACOMA EASTERN RAILROAD
COMPANY, *Respondent*.[1]

NEGLIGENCE — DANGEROUS OPERATIONS — DUTY TO VOLUNTEER—AS-
SUMPTION OF RISKS. One who was attracted to the scene of the lift-
ing of a derailed engine, by reason of the element of danger, which
he fully appreciated, is a mere licensee or volunteer to whom no
duty was owed except not to wilfully and wantonly injure him, al-
though when warned away he took up a place on property adjoining
the right of way which he deemed safe; since he assumed the risk
of apparent danger and cannot complain of want of care or unskill-
fulness whereby he was injured.

SAME—"LAST CLEAR CHANCE"—PRESUMPTIONS. In such case the
doctrines of "last clear chance" and *"res ipsa loquitur"* have no ap-
plication.

Appeal from a judgment of the superior court for Pierce
county, Easterday, J., entered December 23, 1914, dismiss-
ing an action for personal injuries, upon granting a nonsuit.
Affirmed.

*Govnor Teats, Leo Teats*, and *Ralph Teats*, for appellant.

*Geo. W. Korte (H. S. Griggs*, of counsel), for respondent.

MORRIS, C. J.—Appeal from a judgment of nonsuit. On
Sunday, July 12, 1914, respondent was attempting to raise
a derailed engine. Appellant, living near by, was attracted
to the scene through curiosity. Using his own language:

"I came over to see what was going on. I went out there
to see something unusual; something great. I expected to
see a demonstration; see something different from what I
usually saw about lifting things. In the lifting of a big
thing like that, there was an element of danger connected
with it; that something might break or give away that I
would be apt to see if I was around in a safe place."

Appellant was not the only one attracted to the scene.
Many others were led to visit the place as spectators, crowd-
ing in upon the workmen until a policeman drove them back,

[1]Reported in 157 Pac. 485.

telling them to keep back on account of the danger. Appellant finally took a position on the edge of the borrowpit, about fifty feet away from the derailed engine, assuming he was in a safe position and could see all that took place. The method employed was to attach a cable from the wrecking train to the boiler of the engine and then pull toward the track with a rolling movement. In placing the cable around the engine boiler, it was placed back of some lugs, against which, on one of the pulls, the cable slipped. On making another pull, the lug snapped and was hurled to where appellant was standing, inflicting the injuries complained of.

The place where appellant was standing at the time he was injured was just off from the railway right of way; and it is contended, first, that his right of action is based upon the rule requiring those engaged in the use of machinery to use a proper degree of care to prevent injury to persons on adjoining property and those passing on adjacent streets; citing *Spokane Truck & Dray Co. v. Hoefer*, 2 Wash. 45, 25 Pac. 1072, 26 Am. St. 842, 11 L. R. A. 689; *Birkel v. Chandler*, 26 Wash. 241, 66 Pac. 406; *Metz v. Postal Telegraph Cable Co.*, 72 Wash. 188, 130 Pac. 343, and like cases from this and other courts.

These cases have no application because of the lack of important essentials—failure to warn, and lack of knowledge of the dangerous situation. Here, there was both a warning given, and appellant frankly admits he knew there was an element of danger in the work, and it was, partly at least, because of this that he was attracted to the scene. Appellant was a mere licensee or volunteer, and his presence at the spot where he was injured is best understood by referring to his testimony previously quoted. It is this that determines the law against him. He appreciated the presence of danger, which means that the law charges him with the natural results of the thing he appreciated and understood. Knowledge of danger is, in law, knowledge of the dangerous results naturally and proximately flowing from that danger. *Nord-*

*strom v. Spokane & Inland Empire R. Co.*, 55 Wash. 521, 104 Pac. 809, 25 L. R. A. (N. S.) 364. From his own testimony, it is clear that appellant knew and appreciated the dangerous situation. In fact, that was one of the attractions exciting his curiosity and inducing his presence. Knowing he was submitting himself to a known danger would be a voluntary submission to the natural and proximate results flowing from that danger.

In determining respondent's negligence, we must determine the duty it owed to appellant, since negligence occurs only where there is a breach of legal duty. That duty, in the case of licensees and volunteers, is not to willfully or wantonly injure. Not failing in this duty, responsibility for appellant's injury cannot be fastened upon respondent.

Appellant further contends his case is analogous to those where persons upon adjoining property are injured by articles thrown from moving railway trains. Negligence in those cases is predicated upon the duty of a railway company to keep its trains and other dangerous instrumentalities upon and within its right of way. This duty is due not only to owners of adjoining property, but to those who may be upon such property anticipating no danger and relying upon the duty of the railway company to protect them. The law always requires of any property owner the exercise of ordinary care in the use of his property and the agencies operated thereon so as not to injure property or persons on abutting premises, but that duty is not extended to those who voluntarily and knowingly make themselves a part of a dangerous situation, attracted by no motive other than curiosity or amusement. Such persons must take the risk as they find it, and cannot successfully complain of the unskillfulness or lack of due care on the part of those engaged in the work.

Pollock on Torts (Webb's), page 190, in speaking of this rule, says: "A man cannot complain of harm to the chances of which he has exposed himself with knowledge and of his free will;" and thus illustrates the rule:

"If I choose to stand near a man using an axe, he may be a good woodman or not; but I cannot complain of an accident because a more skillful woodman might have avoided it. A man dealing with explosives is bound, as regards his neighbour's property, to diligence and more than diligence. But if I go and watch a firework-maker for my own amusement, and the shop is blown up, it seems I shall have no cause of action, even if he was handling his materials unskillfully;"

citing *Ilott v. Wilkes*, 3 B. & Ald. 304, to the effect that there can be no recovery for injuries where a man voluntarily exposes himself to the mischief which has happened.

A somewhat similar English case is *Batchelor v. Fortescue*, 11 Q. B. Div. 474, where workmen were employed in excavating the earth for the foundation of a building. In the performance of the work, they used a steam crane and winch to which was attached an iron bucket. The deceased was standing by, watching the men at work, when the iron bucket fell upon him. Held, there could be no recovery, for the reason that the deceased voluntarily subjected himself to all the risks attending his being there.

This case is not unlike *Kroeger v. Grays Harbor Construction Co.*, 83 Wash. 68, 145 Pac. 63, where the deceased went upon a trestle used in the construction of a jetty in search of work and, upon being refused, loitered about waiting for some of the men about to go off shift. While so waiting, he was struck by the sweep of a derrick used in unloading rock. We held that no duty rested upon defendant other than to refrain from willful injury.

In *Downes v. Elmira Bridge Co.*, 179 N. Y. 136, 71 N. E. 743, it is said:

"Where one enters a place where work is going on and he knows the nature of the work and the condition of the place, even if many others have been suffered to go there before him, he takes the risk of the operations of the workmen, who cannot reasonably be required to give further notice than the situation itself affords. Dangerous work in plain sight is

notice to a mere licensee. Every one knows that he is liable to meet with danger when passing close by a heavy object weighing many tons, which is being moved by machinery to its position."

Later on, the opinion refers to the fact that plaintiff "was not injured wilfully and wantonly, but by building operations lawfully and openly conducted in the usual way after he had knowledge, and unnecessarily placed himself in a position exposed to obvious dangers. A like case is *Currier v. Trustees of Dartmouth College*, 117 Fed. 44, where no recovery was permitted a student who was injured while watching workmen tear down a large chimney.

In *O'Brien v. Union Freight Co.*, 209 Mass. 449, 95 N. E. 861, 36 L. R. A. (N. S.) 492, a number of cases are cited to the effect that, whether persons in like situation to appellant be regarded as trespassers or licensees, the well settled rule is that the only duty of those engaged in lawful work upon their own property is to abstain from inflicting intentional or wanton injuries. If appellant could bring himself within the rule applicable to those who go upon dangerous premises, either by express or implied invitation, the law would be more favorable to his right of action. He cannot, however, make of himself other than a mere licensee or volunteer, and as to such persons no right of action is given when injury occurs from apparent dangers. *Matthews v. Bensel*, 51 N. J. L. 30, 16 Atl. 195; *Woolwine's Adm'r v. Chesapeake & O. R. Co.*, 36 W. Va. 329, 15 S. E. 81, 32 Am. St. 859, 16 L. R. A. 271; *Plummer v. Dill*, 156 Mass. 426, 31 N. E. 128, 32 Am. St. 463; Thompson, Negligence, § 987.

Appellant contends for the application of the "last clear chance" and "*res ipsa loquitur*" rules in aid of his recovery, but we see no application in either of these rules to the facts in the case.

The judgment is affirmed.

Mount, Fullerton, Chadwick, and Ellis, JJ., concur.