[Sac. No. 1900.    Department One.—April 6, 1912.]

MAE H. DILLER, Individually, RALPH DILLER, VIVIAN DILLER, and MAE H. DILLER as the Guardian, etc., of Octavia Diller, a Minor, Respondents, v. NORTHERN CALIFORNIA POWER COMPANY (a Corporation), Appellant.

NEGLIGENCE—ELECTRIC WIRE ACROSS HIGHWAY—INJURY TO TRAVELER—PRESUMPTION OF NEGLIGENCE.—The fact that a person, while traveling along a public highway, was injured by coming in contact with a highly charged electric wire belonging to an electric light and power company, which was down across the public highway at the point where the accident occurred, raises a presumption of negligence on the part of the company maintaining the wire.

ID.—EVIDENCE SUPPORTS FINDINGS OF NEGLIGENCE.—The evidence, although conflicting, is held sufficient to support the special findings of the jury that the defendant's power line had been negligently constructed; that the negligence consisted in the use of a weak

pin on the cross-bar carrying the wire that fell and that the falling of the wire was caused by this weakness, and that the line was negligently maintained, in that the man in charge neglected to repair the pin after his attention had been repeatedly called to its dangerous condition.

ID.—MEASURE OF DAMAGES FOR DEATH—PROVINCE OF JURY.—In the assessment of damages for a negligent death much is left to the sound discretion of the jury, and its action and that of the trial court will be reversed only where the amount of damages is obviously so disproportionate to the injury proved as to justify the conclusion that the verdict is not the result of the cool and dispassionate discretion of the jury.

ID.—PECUNIARY LOSS LIMIT OF RECOVERY.—In actions for injuries causing death, instituted by the surviving wife and children of the deceased, the plaintiffs are limited in their recovery to the pecuniary loss suffered by them.

ID.—VERDICT OF TWENTY THOUSAND DOLLARS NOT EXCESSIVE.—In such an action, a verdict of twenty thousand dollars, for the death of a healthy man, fifty-seven years of age, who had been contributing at least two hundred dollars a month to the support of his family, cannot be held excessive.

ID.—EARNINGS OF DECEASED AS EVIDENCE.—Evidence of what such a person had earned in the past furnished at least some, if not, indeed, the most satisfactory, basis for estimating what he would in all likelihood have done in the future.

ID.—INSTRUCTIONS AS TO PROOF OF NEGLIGENCE—WANT OF CONFLICT.— In such an action an instruction, to the effect that the plaintiffs were bound to prove the defendant's negligence by a preponderance of evidence, is not in conflict with an instruction to the effect that proof of killing by coming in contact with the fallen wire raised a presumption of the defendant's negligence, and cast upon it the burden of meeting the presumption; and that such presumption need not be overcome by the defendant by a preponderance of the evidence, but it would be overcome if sufficient evidence were produced to balance it.

ID.—IMMATERIAL INSTRUCTION IGNORED BY JURY.—An instruction as to an element of negligence that was not within the issues is immaterial, when the special verdict of the jury shows that the only negligence found and acted upon by them was that alleged.

ID.—ENLARGEMENTS OF PHOTOGRAPHS—EVIDENCE OF MAKER TO PROVE ACCURACY UNNECESSARY.—It is for the trial court to determine, from the evidence before it, whether enlargements of photographs of the *locus in quo* that were received in evidence, are correct representations thereof. The accuracy of the enlargements need not be proved by the maker thereof.

ID.—STATEMENTS TO AND ADMISSIONS OF GENERAL AGENT OF DEFENDANT.—In such action, evidence of statements made to the

general agent of the defendant having charge of its power system concerning the condition of the defective supporting pin, and his replies thereto, were admissible to establish notice to him of the defective construction and to show negligence in maintenance.   It was not necessary to lay a foundation for such declarations by asking the preliminary questions appropriate to an attempt to impeach a witness by proof of contradictory statements made at another time.

ID.—WITNESS FAMILIAR WITH BUSINESS AFFAIRS OF DECEASED.—A witness familiar with the business affairs of the deceased was properly permitted to testify to the amount he had been earning in his business.

NEW TRIAL—MISCONDUCT OF JURY—CONFLICTING AFFIDAVITS—APPEAL. —The refusal to grant a new trial for alleged misconduct of the jury will be upheld on appeal when the affidavits relied on to show misconduct were contradicted by counter affidavits.

APPEAL from a judgment of the Superior Court of Glenn County and from an order refusing a new trial.   William M. Finch, Judge.

The facts are stated in the opinion of the court.

Reid & Dozier, and Chickering & Gregory, for Appellant.

Frank Freeman, and Charles L. Donohoe, for Respondents.

SLOSS, J.—The plaintiffs, widow and children, and the heirs at law of R. Diller, deceased, brought this action to recover damages from the defendant for the alleged negligent killing of said decedent.   In May, 1907, the defendant owned and operated a line of poles and wires for the conducting of electric power to various places in the county of Glenn.   The line ran along the county road between St. John and Hamilton in said county, and, at one point, crossed the road from the westerly to the easterly side thereof.   On the morning of May 19, 1907, R. Diller was driving a team of horses, attached to a buggy, along said road.   At the point where the power line crossed the road, one of the wires, highly charged with electricity, had become detached from one of the poles to which it had been fastened, with the result that it sagged down and hung on or near the surface of the road.   Diller's team came in contact with the wire, and he (together with both horses) was instantly killed.   The plaintiffs charged that the falling of the wire and the consequent death of Diller were caused by the

negligence of the defendant in improperly and inefficiently and negligently constructing and maintaining the "said line and system of poles and wires at said place." The defendant, in its answer, denied negligence on its part, and averred that the deceased had been guilty of contributory negligence.

Upon a trial with a jury, a general verdict for thirty thousand dollars in favor of plaintiffs was returned. The jury also gave answers to special interrogatories. Upon defendant moving for a new trial, the court made a conditional order providing that the motion should be denied if plaintiffs would consent to a reduction of the verdict and judgment from thirty thousand dollars to twenty thousand dollars; otherwise a new trial should be granted. The plaintiffs filed their consent to the reduction, and an order denying the motion for new trial was entered. The defendant appeals from the judgment and from the order denying a new trial.

The appellant argues that the evidence was insufficient to justify a finding of negligence on its part in constructing and maintaining its line of poles and wires. This position cannot, on the record, be supported. As will appear in the discussion of the instructions, the mere occurrence of the accident, under the circumstances shown, was enough to make out a *prima facie* case of negligence. But, regardless of this, there was further evidence to support the verdict. At the point where Diller met his death, the road ran in a northerly and southerly direction. A line of poles ran along the westerly side of the road until it came to the place of crossing, where the wires were brought over to a line of poles on the easterly side. The power was conducted through three wires, two of which were strung on insulators placed at opposite ends of cross-arms attached to the poles, while the third ran on insulators fastened to the tops of the poles. The insulators were screwed onto eucalyptus pins which were fitted into holes in the cross-arms, or the top of the pole, as the case might be. Where the line took an angle, as at the place of the occurrence in question, the top wire was fastened to insulators attached by means of pins to a short cross-arm or "buck-arm," bolted to the pole about eight inches from its upper end. The wire which caused Diller's death was the one which had run along the tops of the poles. It had become detached from the pole which formed the point of the angle. The buck-arm was found lying in the road after the

accident. One of the insulators was broken, as was one of the eucalyptus pins which had been affixed to the buck-arm. The jury found, in answer to special interrogatories, that the defendant's power line had been negligently constructed; that the negligence consisted in the use of a weak pin on the crossbar (buck-arm) attached to the angle pole; that the falling of the wire was caused by this weakness; and that the line was negligently maintained, in that the man in charge neglected to repair said pin after his attention had been repeatedly called to its dangerous condition. While the defendant introduced evidence which would have fully warranted a finding that the fall of the wire was due to causes other than the one assigned in the verdict, it cannot be said that the conclusion reached by the jury was without substantial support. Several witnesses testified that they had, prior to the accident, observed that one or both of the pins on the buck-arm leaned over at an angle toward the road. There was also testimony that this condition had been called to the attention of Mr. Thomas, who was in general charge of the defendant's business in the district in which the line in question was situated. This testimony, together with the circumstance that one of the pins was, in fact, found to be broken immediately after the accident, furnished a sufficient basis for the inferences that the pins in question were not as strong as they should have been, that their weakness was the cause of the fall of the wire, and that this weakness was actually brought to the knowledge of the defendant. No amount of expert or other evidence that the construction of the line was "standard" precluded the jury from drawing these inferences.

The damages fixed by the jury, even when reduced by the action of the trial court to twenty thousand dollars, were heavy, yet we cannot say that the award was so large as to require an appellate court to set it aside as excessive. It is, of course, well settled that in the assessment of damages in cases of this character, much is left to the sound discretion of the jury, and the action of the jury and the trial court will be reversed only where the amount of the damages is obviously "so disproportionate to the injury proved as to justify the conclusion that the verdict is not the result of the cool and dispassionate discretion of the jury." (*Aldrich* v. *Palmer*, 24 Cal. 513; *Morgan* v. *Southern Pacific Co.*, 95 Cal. 501, [30 Pac.

603]; *Redfield* v. *O. C. S. R. Co.*, 110 Cal. 277, [42 Pac. 822, 1063].) In actions for injuries causing death, the plaintiffs are, of course, limited in their recovery to the pecuniary loss suffered by them. (*Taylor* v. *Western Pacific Co.*, 45 Cal. 323; *Munro* v. *Dredging Co.*, 84 Cal. 515, [18 Am. St. Rep. 248, 24 Pac. 303].) The jury was so instructed here. The evidence was that Diller, at the time of his death, was a man in good health, a little over fifty-seven years of age, and that his expectancy of life, according to the American Mortality Table, was 15.39 years. He was engaged in the real estate business in Chico. One witness testified that he was making about six thousand dollars per year in this business. It may be conceded that, in view of his cross-examination, this witness's testimony was not very satisfactory. But we have in addition the statement of the widow that, during the years preceding his death, Diller contributed not less than two hundred dollars per month for the support of his wife and children. There was testimony tending to weaken this statement. But with conflicts of evidence this court has no concern, and if the jury accepted the widow's testimony, as it had a right to do, the allowance of twenty thousand dollars cannot be overthrown as excessive. The amount is not manifestly in excess of a fair compensation for the loss, during the probable remainder of his productive years, of the support which had been, and would be likely to be, furnished by a healthy man, fifty-seven years of age, who had been contributing at least two hundred dollars per month to his family. It cannot, of course, be known what Diller would have earned had he lived, but evidence of what he had done in the past furnished at least some, if not, indeed, the most satisfactory, basis for estimating what he would in all likelihood, have done in the future. (*Shaw* v. *Southern Pacific Co.*, 157 Cal. 240, [107 Pac. 108]; *Bonneau* v. *North Shore R. R. Co.*, 152 Cal. 406, [125 Am. St. Rep. 68, 93 Pac. 106].)

We find no error in the charge to the jury. The court, after instructing that the plaintiffs were "bound to prove by a preponderance of evidence the negligence upon the part of the defendant as alleged in plaintiffs' complaint," gave a further instruction as follows: "The fact that a wire belonging to the defendant, highly charged with a dangerous current of electricity, was down across the public highway at the point where the accident occurred, and that the plaintiffs' intestate, R.

Diller, while traveling along said public highway came in contact with that wire and was killed, raises a presumption of negligence on the part of the defendant company in maintaining the wire, and casts upon the defendant the burden of meeting such presumption. Such presumption need not be overcome by the defendant by a preponderance of the evidence. If the defendant company produces sufficient evidence to balance such presumption, the presumption is overcome." These two instructions are not in conflict. The court properly imposed upon the plaintiffs the burden of establishing by a preponderance of evidence the negligence upon which they relied. At the same time, it ruled that proof of certain facts, standing alone, was sufficient to make out a *prima facie* showing of negligence. This did not relieve plaintiffs of the burden which had been declared by the earlier instruction to rest upon them. They were still required to establish their case by a preponderance of all the evidence, and the jury was expressly told that the verdict must be for defendant if it succeeded in balancing the *prima facie* case (or presumption, as the court termed it), made out by plaintiffs. The proposition that the facts supposed in the later instruction amounted to a showing of negligence which had to be met by countervailing evidence is simply a statement of the doctrine of *"res ipsa loquitur."* We do not doubt that the doctrine is properly applied to the falling upon or across a public highway in such a way as to endanger persons lawfully traveling thereon, of a line of wire carrying, as in this instance, an electric current of twenty thousand volts. (*Western Union Tel. Co.* v. *State,* 82 Md. 293, [51 Am. St. Rep. 464, 31 L. R. A. 572, 33 Atl. 763]; *Newark E. L. & P. Co.* v. *Ruddy,* 62 N. J. L. 505, [57 L. R. A. 624, 41 Atl. 712]; *Newark E. L. & P. Co.* v. *Ruddy,* 63 N. J. L. 357, [57 L. R. A. 624, 46 Atl. 1100]; *Snyder* v. *Western Electric Co.,* 43 W. Va. 661, [64 Am. St. Rep. 922, 39 L. R. A. 499, 28 S. E. 733]; *Boyd* v. *Portland G. E. Co.,* 41 Or. 336, [68 Pac. 810]; *Thomas* v. *Western Union Tel. Co.,* 100 Mass. 156.)

It is complained that instruction XX left it open to the jury to find that the defendant had been negligent in failing to install guard-wires, and that this element of negligence was not within the issues. We think the instruction is not open to the construction which defendant seeks to put upon it. But even if it were, the special verdict shows that the only negligence

found and acted upon by the jury was the use and maintenance of a weak insulator pin. The instruction could not, therefore, have harmed the defendant.

The appellant assigns numerous errors in the admission and rejection of testimony. The more important may be noticed.

Photographs of the scene were allowed to be given in evidence. They were enlargements of pictures originally taken. It is objected that the maker of the enlargements was not called as a witness to prove the accuracy of the pictures offered. But this was not required. It is for the trial court to determine from the evidence before it, whether a photograph offered is a correct representation of the object or scene in question, and the ruling will be sustained on appeal unless it is apparent that there has been an abuse of discretion. (Jones on Evidence, 2d ed., sec. 411; 17 Cyc. 415; *State* v. *Matheson,* 130 Iowa, 440; 114 Am. St. Rep. 427, note; [8 Ann. Cas. 430, 103 N. W. 137]; *Carlson* v. *Benton,* 66 Neb. 486, [1 Ann. Cas. 159, 92 N. W. 600].) The preliminary proof of the accuracy of the photographs here in question was sufficient to justify their admission.

Evidence of statements made to Mr. Thomas concerning the condition of the pins on the buck-arm of the angle pole was proper to show the defendant's knowledge of the unsafe condition of its line. Thomas was its agent in general charge of its power system, and notice to him of a defective construction had a direct bearing on the issue of negligence in maintenance. Similarly, it was proper to show what he had said in response to such statements. Declarations or admissions against interest by a party, or his authorized agent, may be given in evidence, and it is not necessary to lay a foundation for such declarations by asking the preliminary questions appropriate to an attempt to impeach a witness by proof of contradictory statements made at another time. So far as these matters were gone into in questioning Thomas himself, they were legitimate cross-examination.

There was no error in permitting the witness Schuster to testify to the amount Diller had been earning in his business. The extent of his income was certainly relevant, and the witness had testified that he was familiar with Diller's business affairs. His testimony was, it is true, weakened on cross-examination, but this did not affect the admissibility of what he had already stated.

Witness Kibby was not allowed to testify whether the line was of standard construction. But since he subsequently stated that he had not observed the line so as to be able to say whether the construction was or was not proper, it is plain that the ruling, if erroneous, was not prejudicial.

The witnesses who were allowed to state their opinions regarding the construction of the line testified in a manner which fully authorized the court to conclude that they were qualified to give expert evidence.

The other assignments of error in regard to evidence are either trivial in themselves, or are rendered unimportant by the nature of the answers to the special interrogatories.

The motion for a new trial was based in part upon alleged misconduct of the jury. So far as this point is concerned, it is sufficient to say that the material averments of the affidavits relied on by the defendant were contradicted by the counter-affidavits offered by the plaintiffs. Under these circumstances, the action of the trial court in denying the motion must, of course, be upheld.

The judgment and the order appealed from are affirmed.

Shaw, J., and Angellotti, J., concurred.

Hearing in Bank denied.