[Civ. No. 1915.    Fourth Appellate District.—July 10, 1936.]

MARGARET E. FAIRES, Appellant, v. TITLE INSUR-
ANCE & TRUST COMPANY (a Corporation), Respond-
ent.

Margaret E. Faires, *in pro. per.*, G. C. De Garmo, W. M. Crane and A. W. Sorenson for Appellant.

H. A. I. Wolch and Carroll Allen, as *Amici Curiae* on Behalf of Appellant.

Arch H. Vernon, Earl E. Johnson, Lawrence L. Otis and Gilbert E. Harris for Respondent.

MARKS, J.—Plaintiff sought to recover from defendant $1428.57 paid by her as part of the purchase price of a large tract of land in Los Angeles County. Her original subscription to a fund used in this purchase was $1,000. She paid $428.57 in assessments. The action is grounded solely on the failure of defendant to secure from the corpo-

ration commissioner of California a permit to issue securities. Judgment went for defendant and this appeal followed.

In March, 1926, Arthur A. Weber secured an option to purchase this land for the purpose of subdividing it. It was determined that $350,000 in cash was necessary to finance the transaction. An escrow was opened with defendant wherein plaintiff and over one hundred others paid into escrow the $350,000 prior to October 29, 1926, and probably before the last of August of that year. Each' subscriber signed similar escrow instructions. The instrument signed by plaintiff, omitting the description of the property, is as follows:

"Title Insurance and Trust Company,

"Los Angeles, California.

"Gentlemen:

"I, Margaret E. Faires, have joined with various other persons in the purchase of that certain real property hereinafter described, which property I desire to have conveyed to your Company in Trust for subdivision purposes, and to have my interest in such purchase set forth as a beneficiary in the Declaration of Trust which is to be issued by you.

"I, therefore, hand you herewith the sum of $1,000.00, which you are hereby authorized to use as part of the initial payment for said property, when you are in a position to execute your usual form of Declaration of Trust to cover said property in which I am shown as a First Beneficiary thereunder in the same proportion that the above sum bears to $350,000.00, said Declaration to be approved and signed by me before the use of this money.

"The purchase price of said property is to be $1,648,318.50, on a basis of 732.586 acres @ $2250.00 per acre, of which $200,000.00 is to be the initial payment above referred to, the remainder to be secured under said Declaration; any variation in the amount of acreage to be adjusted at the same rate per acre.

"You are to be governed in the preparation of the Declaration of Trust and the closing of this Escrow by instructions from E. O. Myers, Geo. W. Ley and Arthur A. Weber. . . .

"Dated at Los Angeles, Calif., this 16th day of July, 1926.

"(Signed) MARGARET E. FAIRES,

"1408 Chapman Bldg. Los Angeles."

Negotiations between the representatives of the subscribers, who formed what we may term the syndicate for the purchase of the real estate, and the representatives of defendant, followed, and resulted in the execution, on October 29, 1926, of a declaration of trust by the defendant as trustee and members of the syndicate, including plaintiff, as beneficiaries. A deed dated October 9, 1926, was placed in escrow on October 22, 1926, and delivered and the agreed portion of the·purchase price, $200,000, actually paid prior to October 29, 1926. The balance of the money subscribed by the members of the syndicate, $150,000, which was to be used to improve the land, was transferred from the escrow account to the trust fund.

From the portions of the declaration of trust before us and the comments of counsel, it would seem to be in the usual form of a general subdivision trust where the owners of property place its legal title in a trustee for the purpose of subdivision, improvement and sale. The trustee was not to share in the general profits of the venture but was to receive fixed fees for services rendered. All net profits were to be shared by the beneficiaries in clearly determined proportions. The only evidence of the interest of any member of the syndicate in the trust was contained in the declaration of trust, though defendant did write a letter to each beneficiary similar to one sent to plaintiff under date of November 23, 1926, which is as follows:

"Dear Madam:—

"Our Declaration of Trust No. S–7170, covering approximately 846 acres in the Santa Monica Bay District, known as 'Miramar Estates', has been completed and executed by all parties interested therein. This instrument recites you as a First Beneficiary to the extent of 10/3500ths and as a Second Beneficiary to the extent of 10/3500ths.

"The Declaration of Trust, containing all of the signatures, and all other papers relating to this transaction up to this date are on file in the office of the undersigned, where they can be seen at any time by the Beneficiaries.

"Yours very truly,

"TITLE INSURANCE AND TRUST COMPANY,

"By L. F. SCHAEFER.

"Assistant Trust Officer."

■ Plaintiff was a licensed and practicing attorney at law and it should be presumed that before she signed the declaration of trust she not only read that document but understood its factual and legal effect. She was a member of the original syndicate that furnished the money with which to purchase the land and thus put the machinery of the entire transaction in motion. She nominated and appointed three of her associates to act as her agents "in the preparation of the declaration of trust and the closing of this escrow". Knowledge acquired by an agent during the agency and within its scope is imputed to the principal. It would seem strange if these agents, or some of them, actively engaged in completing the trust did not know at the time that a permit for the transaction had not been issued by the commissioner of corporations. Plaintiff, an attorney at law, was acquainted with all the details of the transaction which were set forth in the declaration of trust which she signed. She should have realized in 1926, the necessity of a permit from the commissioner of corporations, if such permit were necessary. We might suggest that as plaintiff was one of the original members of the syndicate that purchased the land and made the speculation possible, intending to profit by it, that it was as much her duty as it was the duty of anyone else connected with the transaction to see that a permit was obtained if one were necessary. However, the trial court found that she gained actual knowledge of the lack of a permit in 1931. From the view we take of the case we do not need to question this finding or put our decision on any of the grounds just suggested.

■ We know of no rule of law that prohibits two or more persons joining together to purchase land. We know of no reason why those thus purchasing land may not, as a matter of convenience, place its title in a trustee. The legal effect of the elements of the transaction before us may be thus analyzed: The members of the syndicate furnished the money with which to acquire title to land and placed this money in escrow with defendant. At that time defendant was nothing more than an escrow holder. The necessary portion of the purchase price to acquire legal title to the land was paid out of escrow to the owner and title taken in the name of defendant, trustee. This was prior to the execution of the declaration of trust. Under familiar prin-

ciples of law, a resulting trust immediately arose in favor of those furnishing the consideration paid to the owner. (Sec. 852, Civ. Code.) The interests of those furnishing the purchase money were then immediately fixed and determined by operation of law. ■ When the declaration of trust was executed thereafter, an express trust came into being. The beneficiaries received nothing more than that which they already owned under the resulting trust. They merely had written evidence of their respective interests with the powers of the trustee clearly defined. There was no sale to them of any interest in the trust estate at the time of the execution of the declaration of trust as "sale" is defined in subdivision 9 of section 2 of the Corporate Securities Act, as in effect in 1926. (Stats. 1925, p. 962.) Defendant did not at that time transfer any interest in property to any member of the syndicate. The members already owned those interests. No "pecuniary consideration called a price" was paid by any member of the syndicate to plaintiff for an interest in the property. The money for such interests had been paid to the owner prior to the execution of the declaration of trust while defendant was merely an escrow holder. Defendant received no part of the purchase price of the land. In so far as defendant was concerned, the transaction did not come within the terms of the Corporate Securities Act in effect at that time. (See *Bernesen* v. *Fish,* 135 Cal. App. 588 [28 Pac. (2d) 67].)

■ The declaration of trust contained the provision that the interest of the beneficiaries should be personal and not real property. Plaintiff urges that this provision effected a sufficient change in the interest of the beneficiaries to bring the transaction within the provisions of the Corporate Securities Act. It is probably true that this effected the conversion of an interest in real estate into personal property. It is also evident that this was done merely for convenience in administering the trust and in deeding out lots to purchasers. The actual *quantum* of the interest of each beneficiary was not changed and there was no sale of any interest at that time, nor was there any offering of any interest to anyone. This conversion of an interest in real property into personal property should not be held to affect the rights of the parties in so far as such rights are here involved.

The only definition of a security in the Corporate Securities Act applicable here would seem to be subsection "d" of subdivision 7 of section two of that act (Stats. 1925, p. 962), which defined a security as "any instrument offered for sale, or sold, or issued to the public by any company . . ." There is an entire lack of any evidence that defendant either offered for sale or sold or issued to the public any instrument or other evidence of interest, or interest in the trust. The membership of the syndicate was filled and the list closed long before the trust was created. Defendant did not solicit membership in this syndicate. It merely served as the channel through which the purchase money passed from the subscribers to the land owner. If soliciting membership in this syndicate was a violation of the corporate Securities Act plaintiff should have sought her remedy against those engaged in such solicitation and not against defendant who did not solicit.

Judgment affirmed.

Barnard, P. J., concurred.

Jennings, J., being absent, did not participate herein.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on September 4, 1936.