[Civ. No. 13074. Second Dist., Div. Two. Sept. 8, 1941.]

TRANSCONTINENTAL & WESTERN AIR, INC. (a Corporation), Appellant, v. BANK OF AMERICA NATIONAL TRUST AND SAVINGS ASSOCIATION (a National Banking Association), Respondent.

Tripp, Penney & Callaway for Appellant.

Louis Ferrari, Edmund Nelson and John E. Walter for Respondent.

MOORE, P. J.—Plaintiff appeals from a judgment entered in favor of defendant upon an agreed statement of facts.

Plaintiff operates certain airline transportation routes in the United States. In connection with its airlines, it maintains offices for general business traffic and ticket sales in a number of cities. Defendant is a national banking association with its principal office in the city of San Francisco. It maintains many other offices in California. Incidental to its general banking business, it issues and sells travelers cheques.

Pursuant to an agreement between the parties accomplished by correspondence, on or about September 22, 1938, plaintiff forwarded to defendant a list of travel offices and names of persons in charge. Shortly thereafter defendant forwarded travelers cheques in the amount of $4,000 to each of such offices. The cheques were to be sold by plaintiff to the traveling public at a sale price of three-fourths of 1 per cent above their face value. Of this profit on the sales, one-half of 1 per cent was to be retained by plaintiff as its commission, the remaining one-fourth of 1 per cent was to be remitted by plaintiff to the bank.

When the first shipment of travelers cheques was forwarded to plaintiff's St. Louis office, one Ole May was stationed at plaintiff's San Francisco office. For several days prior to November 11, 1938, May was a "District Traffic Agent" of the St. Louis office and as manager thereof had access to the travelers cheques received by that office. On November 11th May disappeared. Five days later plaintiff discovered that the shipment of cheques in the amount of $4000 was missing. Subsequent to the disappearance of May and prior to February 28, 1939, he sold the cheques which he took from the St. Louis office in the amount of $2810 for his personal use. The cheques so negotiated by May came duly to the office of the bank and were honored on divers days from the 15th of November, 1938, until March 2, 1939. Thereafter, on the 27th day of May, 1939, May called at an office of the bank in the city of Los Angeles and delivered the balance of the unsold cheques in the sum of $1190 to an officer of defendant.

After demands by the bank for the payment of the cheques negotiated by May, defendant charged and deducted from the account of plaintiff the sum of $2810 without the consent of plaintiff. This action followed. This discussion disposes of all of appellant's contentions.

All of the correspondence which constituted the contract between the parties was between plaintiff and defendant. Attached to the letter directed to plaintiff at its St. Louis office by defendant, under date of September 27, 1938, was a receipt which contained the same terms and conditions as set forth in identical receipts forwarded at the same time to all other offices of plaintiff. The language of that receipt is that the plaintiff "agrees to observe the same care and protection in the custody of the Travelers Cheques as would be given a

like amount of currency; to hold the said Travelers Cheques in trust for the Bank of America National Trust and Savings Association; that said Travelers Cheques and proceeds of the sale thereof shall be held separate and apart from the assets of the undersigned, to be fully responsible for their due issue and for the prompt remittance to the Bank of America of the proceeds of the sale thereof, and to notify the Bank of America National Trust and Savings Association promptly in case of loss or theft of said Travelers Cheques.''

Plaintiff received the cheques at its St. Louis office October 3, 1938. That it undertook the sale thereof is emphasized by the language of plaintiff in a letter to the bank wherein it mentioned the ''possibility of our handling your travelers checks . . . you notify this office of all shipments of travelers checks made to our various agents . . . confine sales to our city traffic offices where our personnel can devote the proper time to selling . . . will advise our personnel to accept your stock and begin sales . . . a list of our traffic offices and the names of persons in charge is also attached . . . Bank of America travelers checks will be available for sale at all T. W. A. traffic offices.'' This establishes a contract of agency between plaintiff and defendant. It betakes of nothing of the nature of a joint adventure. Plaintiff, having promised to make the sales for a profit, directed its employees to sell and issue the cheques. The bank had nothing to do with the transfer of May to the St. Louis office and had had no contact with him prior to or during the time he was manager of that office. At the time the cheques were forwarded that office was under the management of one Craden. May appeared immediately thereafter. He was there as an employee of plaintiff. As an instrumentality of plaintiff, he took possession of the cheques. Having received the cheques in order to make sales of them, plaintiff thereby became defendant's agent. (*Carter* v. *Rowley,* 59 Cal. App. 486 [211 Pac. 267].)

In no sense was May an agent of the bank. The bank exercised no direction or control over the employees of plaintiff with respect to the handling of the cheques. Plaintiff's agents in charge of its various offices negotiated the sales of the cheques solely because plaintiff had authorized defendant to forward them to the several managers of its far-flung offices. Moreover, while there was nothing in the correspondence requiring plaintiff to employ agents to sell the cheques, yet it

appears repeatedly that the cheques were to be sold by appellant's employees. So far as the bank was concerned, plaintiff might have replaced any employee handling the cheques at any of its offices with another employee without consulting defendant. All of the services to be performed in the sales of the cheques were to be done by plaintiff and its own organization.

In making the sales plaintiff could act only through its own officers and employees. The acts of such parties in the performance of the business of the plaintiff were acts of the corporation itself. Having agreed to act as the agent of defendant for a consideration, plaintiff became liable for the fulfillment of the covenants undertaken. (*American Soda Fountain Co.* v. *Stolzenbach*, 75 N. J. L. 721 [68 Atl. 1078, 127 Am. St. Rep. 822, 16 L. R. A. (N. S.) 703]; *Killingsworth* v. *Portland Trust Co.*, 18 Ore. 351 [23 Pac. 66, 17 Am. St. Rep. 737, 7 L. R. A. 638]; *Wells-Dickey Co.* v. *Embody,* 82 Mont. 150 [266 Pac. 869]; Restatement of the Law of Agency, sec. 406.)

It is fundamental that if a duty of the master be violated by his employee the master is liable the same as though he personally were guilty of the breach. Such liability of the master is not obviated by the fact that his servant acted contrary to instructions and criminally. (*Muehlebach* v. *Paso Robles Springs Hotel Co.*, 65 Cal. App. 634 [225 Pac. 19].) The fact that the faithlessness of the employee in committing the wrong may amount to a felony does not alter the obligation of the agent to his principal so long as the servant is acting within the scope of his employment. (Ibid.; *Hiroshima* v. *Pacific Gas & Elec. Co.*, 18 Cal. App. (2d) 24 [63 Pac. (2d) 340]; *Grigsby* v. *Hagler,* 25 Cal. App. (2d) 714 [78 Pac. (2d) 444].) Because May exceeded his authority in withholding proceeds received by him from the sales of the cheques does not relieve plaintiff; in issuing the cheques he was acting within the scope of his employment. (*Grenada Bank* v. *Moore,* 131 Miss. 339 [95 So. 449].) Whether plaintiff was a gratuitous bailee or served for hire it was liable for the cheques.

We have observed the distinction of those cases involving the recovery of damages (1) where property is delivered to another and it is stolen by, or destroyed by reason of the negligence of an employee, from (2) those cases where prop-

erty is delivered to another and is stolen by some one not in the relationship of employee. The cases cited by appellant come within the second classification with the exception of two, *Miller* v. *Citizens National Trust & Savings Bank*, 1 Cal. App. (2d) 470 [36 Pac. (2d) 1088], and *Copelin* v. *Berlin Dye Works etc. Co.*, 168 Cal. 715 [144 Pac. 961, L. R. A. 1915C, 712]. The latter cases do not apply here. The facts in each of them show that the wrongful act in question was entirely unrelated to the purposes of the agency or was committed independent of the transaction of the principal's business. (*Grigsby* v. *Hagler, supra.*) As to the Miller case, it was emphatically disapproved in *Rutherford* v. *Rideout Bank*, 11 Cal. (2d) 479 [80 Pac. (2d) 978, 117 A. L. R. 383]. The case of *Copelin* v. *Berlin Dye Works* was distinguished by the court in *Muehlebach* v. *Paso Robles Springs Hotel Co., supra,* where the court pointed out that the cleaning company assumed no duty of safekeeping the jewelry and delegated no such duty to its servants. In each of the cases of *Perara* v. *Panama-Pacific International Exposition Co.*, 179 Cal. 63 [175 Pac. 454], and *Travelers Fire Ins. Co.* v. *Brock & Co.*, 30 Cal. App. (2d) 112 [85 Pac. (2d) 905], the jewelry was taken by a thief who was not an employee.

▮ Plaintiff was liable for the safety of the cheques by the terms of the receipt which accompanied their shipment. While it was indeed never signed by plaintiff yet the facts that it accompanied the cheques and that its provisions were the substance of the prior correspondence made it binding upon plaintiff. This receipt notified plaintiff that it was to "observe the same care and protection in the custody of these Travelers Cheques as would be given to a like amount of currency . . . to hold said travelers cheques in trust for the bank"; to hold the cheques and proceeds of sale "separate and apart from T. W. A. assets . . . to be fully responsible for their due issue and for prompt remittance (to bank) of the proceeds of sale thereof." By the acceptance of the cheques accompanied by this declaration of plaintiff's obligations, the latter undertook the responsibility of the due issuance of the cheques. All of the duties imposed by the terms of the receipt were breached by plaintiff.

▮ Appellant contends that by paying all of the cheques negotiated by May at the time of their presentation, the bank's voluntary acts defeat its right to charge the account of plaintiff. This claim in effect is that the several *bona fide* holders

of the cheques issued and appropriated by May to his own use must stand the loss of the sums paid for the cheques. To grant such contention would serve to destroy public confidence in negotiable paper. Cheques in the sum of $2810 were issued by May for his personal use. The bank had no information that any payee had knowledge that May had negotiated the cheques without the consent of the bank. This made the indorsee of each of the illicitly issued checks a *bona fide* holder thereof.

May had authority to sell the cheques and to cause the signature of the purchaser to be filled in at the proper places. Under the Negotiable Instruments Law, where a check is in the hands of a holder in due course a valid delivery of the instrument is conclusively presumed to have been made by all parties prior to him. (Civil Code, sec. 3097.) Even though the check might have been stolen from its maker prior to its delivery, yet such theft is not a defense against a *bona fide* holder for value. (*Northern Pacific R. R. Co.* v. *Spokane Valley Growers Union*, 132 Wash. 607 [232 Pac. 691, 43 A. L. R. 194] ; *American Express Co.* v. *Anadarko Bank & Trust Co.*, 179 Okla. 606 [67 Pac. (2d) 55, 110 A. L. R. 972].)

Inasmuch as the cheques were complete at the time they came into the hands of innocent holders, the latter will not be allowed to suffer the loss occasioned by the dishonesty of an employee who appropriated the cheques by stealthily issuing them for funds for his own use. (*American Express Co.* v. *Anadarko Bank & Trust Co., supra; Cooke* v. *United States*, 91 U. S. 389 [23 L. Ed. 237].) In the latter case it was held that treasury notes printed and ready to issue and which were stolen and placed in circulation passed title to *bona fide* purchasers for value. The cheques wrongfully issued by Ole May to himself having come into the possession of *bona fide* holders, the title gained by such holders was superior to that of the bank. Each cheque on its face was free from suspicion of the illegal act of May; no holder had any notice. It follows that the purchaser of any of such cheques in good faith was not required under any principle embodied in the Uniform Negotiable Instruments Law to inform himself of the history of the cheque before he could with safety acquire legal ownership thereof. So universal is the use of commercial paper, such as the travelers cheques in question, that it should have the same freedom of circulation

as a government bond. This is possible only by giving to it the sanctity of the promise of a saint by encircling it with the arm of the law. Any other method of treating such paper in the channels of trade and commerce would interfere with the normal flow of business transactions. (*Chemical National Bank* v. *Kellogg,* 183 N. Y. 92 [75 N. E. 1103, 111 Am. St. Rep. 717, 5 Ann. Cas. 158, 2 L. R. A. (N. S.) 299].) If a traveler's cheque, after the blanks are filled, is negotiated to a holder in due course, it is valid and effectual for all purposes in his hands. (Secs. 3095, 3097, Civil Code; secs. 14 and 16 N. I. L.)

The case of a stolen blank traveler's cheque which had been later filled out is not parallel to the case at bar. But to the extent that it may be likened to the act of May, it has been disposed of by the courts of this state. (*People* v. *Cohen,* 71 Cal. App. 367 [235 Pac. 658].) It was there held that a cheque, although blank at the time of the taking, was of substantial value; and that the thief was liable for the actual value to the lawful owner. In the case of *Northern Pacific R. R. Co.* v. *Spokane Valley Growers Union, supra,* the defendant had signed an entire book of cheques in blank and placed them in its safe. A bookkeeper having access to the cheques filled in his name as payee in a number of them and cashed them at divers institutions. When the cheques were received by the purchasers from the faithless bookkeeper, they were complete and did not upon their faces indicate that they were other than genuine. The purchasers thereof having paid the full face value at the time of acquiring them, a valid delivery of the cheques was conclusively presumed by all of the predecessors of him who in due course presented them for payment.

█ The law merchant, the history of the customs of bankers and tradesmen, the oft-enacted and revised statutes in occidental states guaranteeing the regularity and integrity of negotiable instruments regularly obtained in due course— the confluence of these and other economic forces has so fortified negotiable paper that in the absence of proof of notice of any covert vice in its issuance or endorsement, it is binding upon its maker. The fortunes and conveniences of commerce render it imperative that such paper should circulate with such character as to reassure all holders of its security. █ The cheques issued by May to himself were of that character. Consequently defendant became liable to all holders thereof

who were innocent of May's wrongdoing and the cheques not having been returned to the bank before being acquired by innocent holders plaintiff is liable for their conversion. Appellant held them as bailee under agreement "to be fully responsible" for their due issue and for the prompt remittance to the bank. That created an absolute liability for the safe return of them or of their value. (4 Cal. Jur. 16, 20.)

Finally, the judgment must be affirmed upon another theory, to wit, the negligence of plaintiff. When promissory notes or cheques are endorsed in blank and they pass into the hands of innocent purchasers through the negligence of those who have their custody, the payors cannot escape their obligation because the instruments were stolen. (*Phelps* v. *American Mortgage Co.*, 40 Cal. App. (2d) 361 [104 Pac. (2d) 880]; *Allen Grocery Co.* v. *Bank of Buchanan*, 192 Mo. App. 476 [182 S. W. 777].) The cheques were forwarded to May pursuant to plaintiff's express instructions. He had authority to sell the cheques and to instruct the purchasers how to fill in the blanks. Since the theft of the cheques resulted solely from plaintiff's negligence, it must suffer the loss occasioned by its own neglect. "Where one of two innocent persons must suffer by the act of a third, he, by whose negligence it happened, must be the sufferer." (Civil Code, section 3543.)

Judgment is affirmed.

Wood, J., concurred.

Mr. Justice McComb, deeming himself disqualified, took no part in this decision.