[Civ. No. 15627. Second Dist., Div. One. June 24, 1947.]

.SEGAL O. DRESSEL, Respondent, v. PARR CEMENT CO. et al., Defendants; ERIC FLODINE, Appellant.

Peter Youngdahl for Appellant.

Faries & McDowell, C. E. McDowell, McIntyre Faries and Willard J. Stone, Jr., for Respondent.

DORAN, J.—The complaint herein alleged that Eric Flodine, the appellant, was the owner and in possession of a certain subdivision located in North Hollywood, and that through the instrumentality of various subcontractors, was engaged in the erection of 156 residences in such subdivision. It further appears that the Valley Shingle Company had undertaken to shingle the roofs of these houses; that the plaintiff was employed by this company as a roofer, and at the time of the alleged injury was engaged in shingling one of the houses.

The complaint alleges that the house in question was so negligently constructed that when the plaintiff, in the course of employment, stepped upon a certain portico or small porch roof, "the same fell away from the building and precipitated the plaintiff to the ground," resulting in the injuries complained of.

The case was tried before a jury, and at the conclusion of plaintiff's case, a nonsuit was granted as to defendant Stokes, the general contractor, and another defendant, Tony Parravano, doing business as Parr Cement Company. A motion for nonsuit as to the appellant, Eric Flodine, was denied. The jury returned a verdict for the respondent and against the appellant in the sum of $2,000. Thereafter appellant's motion for a new trial was denied, followed by the present appeal.

Appellant's points for reversal include, (A) error in refusing to grant a nonsuit; (B) error in admitting plaintiff's testimony in rebuttal as to a conversation with appellant's representative, Harry Fossedal; (C) error in refusing to give an instruction directing a verdict for defendant; and (D) error in refusing to grant appellant's motion for a new trial.

In reference to the alleged errors in refusing to grant a nonsuit and a directed verdict, appellant contends that "There is no testimony in this record from which it may fairly be inferred that he (Flodine) directly, or indirectly, either neglected some duty which he owed to this plaintiff or that he did some negligent act which proximately caused the accident." In this connection it is asserted that "All development was by independent contractors over which Flodine exercised no control"; following this assertion, however, is the statement that "Fossedal, as appellant's representative, checked the work upon each as a subcontractor reported his work ready, to see that it conformed to F. H. A. requirements and reported to Flodine, who in turn issued his check." It is further claimed that "Neither appellant or his representative Fossedal had ever known or noticed whether the posts to support the small portico upon which plaintiff stepped was in place or ever had been"; and that, "For 17 years plaintiff had followed the trade of a shingler, knew the type of construction employed, yet made no inspection or took any measures to ascertain whether the portico was safe to step on."

It is apparent, as noted in the respondent's brief, that the above contentions seek a review of the weight of the evidence. The well-known rule, as stated in *Crawford* v. *Southern Pac. Co.*, 3 Cal.2d 427, 429 [45 P.2d 183] is that "when a verdict

is attacked as being unsupported, the power of the appellate court begins and ends with a determination as to whether there is any substantial evidence, contradicted or uncontradicted, which will support the conclusion reached by the jury. When two or more inferences can be reasonably deduced from the facts, the reviewing court is without power to substitute its deductions for those of the trial court.'' In the instant case, while the record discloses the usual conflict as to various details, such, for example, as the number of nails used in fastening the porch roof to the main building, the transcript undoubtedly contains substantial evidence from which the jury could reasonably find in favor of the plaintiff.

Among other things, the record reveals that the plans and specifications of the houses in question were prepared under Flodine's supervision; that the sole support of the porch roof was the 16-penny nails by which it was tacked to the house, and that the finished columns which would have supported the porch roof were not then in place. It likewise appears that Flodine himself, had been a general contractor for some 30 years, and was familiar with roofing methods; that Flodine personally examined all houses ''from sitting in an automobile, and checked over all the work.'' The porch roof in question was on the front of the house, facing the street, apparently with no obstruction obscuring the view of one examining it from the street. According to Flodine's testimony, Mr. Fossedal was ''My representative''; appellant's brief refers to Fossedal as ''appellant's representative''; an office was maintained on the tract by Flodine, and Fossedal, designated as ''Superintendent for Eric Flodine,'' was on the job every day, ''looking after the job in general, getting lumber for the subcontractors, seeing they carried on the work according to plans and specifications,'' etc. There was also evidence to the effect that the respondent Dressel had no knowledge that the porch roof was unsupported; that pursuant to instructions, Dressel went upon the roof to do the shingling as soon as it was ready; that it was customary to start shingling at the lowest point of a roof, and that in doing so, Dressel stepped onto the porch roof which immediately collapsed. Negligence and contributory negligence were clearly questions of fact which have been settled by the jury contrary to appellant's contentions, and under the rule hereinbefore mentioned, appellate interference is unwarranted.

Appellant's argument that the trial court erred in admitting plaintiff's testimony in rebuttal as to a conversa-

tion between plaintiff and Fossedal after the accident, is without merit. The appellant's brief complains that "After all testimony was in and after Fossedal, plaintiff's witness, had left the court room, plaintiff was recalled by his counsel and testified over defendant's objection," that after the accident, on the way to the hospital, Fossedal, referred to as appellant's representative and superintendent, "said that was a terrible thing to have happening, and he said that is the type of thing he had been up against on the tract since it started. I said that is the worst accident I had ever had, and, I says, 'there were no supports under there.' He (Fossedal) said, 'I know there weren't.' He said, 'It is a wonder that it hadn't fallen off on somebody's head before you stepped on it.'"

Out of the presence of the jury the above testimony was offered for the purpose of proving "that Fossedal knew, admitted knowing that there had been difficulties with these fellows taking out these supports and leaving them out, he had expected something of the kind to happen, and he is giving this testimony because he was the representative of Mr. Flodine, and Mr. Flodine has attempted to testify there was no knowledge given him in reference to conditions on the tract." The testimony was not offered for impeachment but for the purpose of showing knowledge of the dangerous condition on the part of appellant's general representative in charge of operations.

Appellant's argument that since the conversation with Fossedal was admittedly not a part of the res gestae, the statements made therein could not bind the appellant, misses the theory on which this evidence was offered and admitted. As the trial court observed in ruling on the objection, there was evidence that Fossedal "was the general superintendent." ██ And it is a well-established rule "that the principal is chargeable with, and is bound by the knowledge of, or notice to, his agent received while the agent is acting within the scope of his authority and which is in reference to a matter over which his authority extends." See 2 American Jurisprudence 286. Or, as stated in *Faires* v. *Title Ins. & Tr. Co.*, 15 Cal.App.2d 350, 354 [59 P.2d 428], and elsewhere, "Knowledge acquired by an agent during the agency and within its scope is imputed to the principal." ██ The evidence in question was properly admitted for that purpose, for as stated in 20 American Jurisprudence 511, "Post rem statements of an agent, however, may be introduced in evidence against the

principal for the purpose of showing his knowledge of the transaction." See, also, *Diller* v. *Northern California Power Co.*, 162 Cal. 531, 538 [123 P. 359, Ann.Cas. 1913D 908], where the court said: "Thomas was its agent in general charge of its power system, and notice to him of a defective construction had a direct bearing on the issue of negligence in maintenance."

It is further asserted that in any event this evidence should not have been admitted on rebuttal, after having been "withheld until the last minute and when there was no way to offset it." But, as admitted in appellant's brief, "the Court has wide power in determining the order of trial," and the record discloses no abuse of this discretionary power. Moreover, there was no request by appellant for permission to offer further evidence to "offset" this testimony. Immediately after its reception, appellant's attorney declined the right of cross-examination of the witness, and the case was closed.

There being substantial evidence to support the verdict, and no prejudicial error appearing in the record, the judgment is therefore affirmed, and the attempted appeal from the order denying a new trial is dismissed.

York, P. J., and White, J., concurred.