[Civ. Nos. 19196, 19207. Second Dist., Div. Two. Dec. 26, 1952.]

HARRY MARON et al., Appellants, v. BENJAMIN H. SWIG et al., Defendants; SAYDE GENIS, Respondent.

Amos Friedman and Fred Horowitz for Appellants.

Pat A. McCormick, Frank P. Doherty, Milton A. Krug and Theodore Weisman for Respondent.

FOX, J.—Plaintiffs leased certain space in the Spreckels Building, located in the city of Los Angeles, for the purpose of carrying on the jewelry business. Defendants are the owners and lessors. The doors to the demised premises were already equipped with locks, but the lease provided, among other things, that no additional locks would be placed on the doors and no duplicate keys were to be made without the consent of the owners. Three master keys were retained by the lessors, who seldom visited the building: one was kept by Mr. Genis, their agent and manager, one was in the possession of Mr. Lantz, as day superintendent, and the third was given to the night man. Genis operated a real estate business from his office in the building. He was absent from the city, however, about one-third of the time. He told Mr. Maron, who was in charge of plaintiffs' business, to contact Lantz with respect to "anything that might arise in the space." The latter testified that he looked after the building for Genis. Some months after plaintiffs took possession they discovered an unaccountable shortage in their inventory. Early in 1946 Maron requested Lantz to change the hours of the cleaning crew, which was furnished by defendants, from night to the daytime when plaintiffs would be there. Lantz refused to comply with this request. Some six months later, after having discovered further inventory losses, Maron again asked Lantz to change the hours of the cleaning crew to the daytime and also to change the locks, so that only the tenants or their employees would have keys to the premises. Lantz refused this request also. During 1947 and 1948 Maron advised Lantz several times of their continued inventory losses and renewed his request that the hours for cleaning be changed and that new locks be installed. Lantz still declined to accede to this request. There were four other tenants to whose premises neither the owners nor their representatives had keys. It was finally discovered that Lantz had been stealing plaintiffs' merchandise, gaining admission to the premises by the key which he had as superintendent. A judgment of nonsuit was entered, from which plaintiffs appeal.

Before the liability of the owners of the building for the thefts of Lantz can be determined three intermediate factual questions must be decided: (1) Was notice by plaintiffs to Lantz of the theft of their merchandise notice to defendants; (2) was plaintiffs' request for change of locks and elimination of outstanding keys reasonable; and (3) if their request was reasonable, was it within the scope of Lantz's authority to

make the change? If these questions are answered in the affirmative then a prima facie showing of defendants' liability would be made as to merchandise stolen after such notice and request.

In their complaint plaintiffs do not claim compensation for losses prior to August 1, 1946, and in their reply brief they direct attention to the fact that they do not seek recovery for any theft which occurred prior to the first notification to defendants through Lantz. ▪ Was notice to Lantz by plaintiffs of the thefts notice to defendants? The answer is Yes, if such was within the scope of his agency, for "Knowledge acquired by an agent during the agency and within its scope is imputed to the principal." (*Faires* v. *Title Ins. & T. Co.*, 15 Cal.App.2d 350, 354 [59 P.2d 428] ; *Dressel* v. *Parr Cement Co.*, 80 Cal.App.2d 536, 540 [181 P.2d 962] ; *Hellar* v. *Bianco*, 111 Cal.App.2d 424, 427 [244 P.2d 757] ; Civ. Code, § 2332.) The fact that the knowledge acquired by the agent was not actually conveyed to the principal does not prevent the operation of the rule. The agent may have been thus guilty of a breach of duty to his principal, yet the knowledge of the agent has the same effect as to third persons as though his duty had been faithfully performed. (*Columbia Pictures Corp.* v. *DeToth*, 87 Cal.App.2d 620, 630 [197 P.2d 580].) ▪ Was it within the scope of Lantz's agency to receive such complaints from the tenants and to take reasonable means to correct the conditions causing the same? These were questions of fact for the jury. (See *McChristian* v. *Popkin*, 75 Cal.App.2d 249, 255 [171 P.2d 85] ; *Hiroshima* v. *Pacific G. & E. Co.*, 18 Cal.App.2d 24, 29 [63 P.2d 340].) Genis was the agent of the owners and the manager of the building. He had an office in it from which he carried on his real estate business. Maron testified to a conversation with Genis soon after plaintiffs moved in in which "Mr. Genis stated that Dan Lantz was the superintendent of the building, the man to see for any of the facilities that may need adjusting or anything that might arise in the space, that I should contact Mr. Lantz to look after it." Genis was out of the city four months out of the year during the period here involved. In response to a question as to his duties, Lantz testified: "Well, I managed the building in a way, looked after it for Mr. Genis." Respondent admits Lantz "was vested with considerable authority with respect to the management and operation of the building. He hired and dismissed, bought supplies, took care of tenants' needs, and

generally looked after the building.'' The foregoing demonstrates that the extent and character of Lantz's authority and agency was not clear cut and was therefore a matter for the jury's determination.

It may be claimed that, since Lantz had an interest contrary to his employers, notice to him of the thefts was not notice to them regardless of the scope of his agency and that notice to him could serve no purpose because, as the thief, he already knew too well the source of plaintiffs' trouble.

█ The rule, however, is that if the agent is in fact acting for his principal in the transaction, even though he may have an opposing personal interest, it is his duty, notwithstanding his interest, to communicate to his principal any facts in his possession material to the transaction, and the law will therefore presume in favor of third persons, that he made such communication. (*West American Fin. Co.* v. *Pacific Indem. Co.,* 17 Cal.App.2d 225, 236 [61 P.2d 963]; *National Bank of San Mateo* v. *Whitney,* 40 Cal.App. 276, 283-284 [180 P. 845]; *McKenney* v. *Ellsworth,* 165 Cal. 326, 329 [132 P. 75]; *Williams* v. *Hasshagen,* 166 Cal. 386, 393 [137 P. 9]; 6A Cal. Jur., pp. 1169-1170, § 665.)

On the question of the reasonableness and practicability of Maron's request for change of locks and that plaintiffs have possession of all keys, the evidence shows that there were four tenants in the building to whose premises the employees of defendants did not have keys.

█ If the jury found that it was within the scope of Lantz's employment to receive notice of thefts from tenants' premises, and that the request of plaintiffs to change the locks and retain all keys was reasonable, then it would become the duty of the owners to protect their tenants by complying with their request. █ If the jury should find this duty was within the scope of Lantz's authority a prima facie showing of liability would be made, because under Civil Code section 2338 a principal is responsible to third parties for wrongful acts committed by his agent in and as a part of the transaction of the business of the agency and for the agent's willful omission to fulfill the obligations of the principal. (*Grisby* v. *Hagler,* 25 Cal.App.2d 714, 715 [78 P.2d 444]; *Transcontinental & W. Air, Inc.* v. *Bank of America,* 46 Cal.App. 2d 708, 713 [116 P.2d 791]; *Carr* v. *Crowell,* 28 Cal.2d 652, 655 [171 P.2d 5].)

Since there were questions of fact as to the scope of Lantz's authority, and the reasonableness of plaintiffs' request, and

since the evidence would have sustained findings on these issues adverse to defendants and established a prima facie showing of liability, the order granting respondent's motion for a nonsuit was clearly prejudicial.

The order of Judge Herndon granting plaintiffs' motion to retax costs becomes moot by virtue of our conclusion as to the judgment. The appeal (Civ. No. 19207) therefrom is dismissed.

The judgment is reversed.

Moore, P. J., concurred.

McComb, J., dissented.