[Civ. No. 10. Fifth Dist. Nov. 22, 1961.]

THE MOUNTAIN COPPER COMPANY, LIMITED. Plaintiff and Appellant, v. WELCOME GROWERS GIN COMPANY, INC., Defendant and Respondent.

Allan, Miller, Groezinger, Keesling & Martin and Robert M. Jones for Plaintiff and Appellant.

Avery, Meux & Gallagher, John J. Gallagher and John H. Baker for Defendant and Respondent.

STONE, J.—Plaintiff-appellant filed an action against defendant-respondent gin company for the sale price of fertilizer alleged to have been furnished defendant and for which defendant either expressly or impliedly agreed to pay. The case was tried to the court without a jury and from a judgment for defendant, plaintiff appeals.

Defendant gin company as a service to its growers advanced certain expenses necessary to produce a cotton crop. The items were estimated, budgeted, and the total secured by a lien on the crop to be produced. The items were advanced as needed, and fertilizer was a budgeted grower expense. During 1956 and 1957 one W. E. Carr, Jr., was gin manager for defendant. At the same time he conducted his own fertilizer business from the gin office and, acting in this dual capacity, sold fertilizer to growers. Carr had the fertilizer shipped to the gin, and from there it was hauled to the ranches of the individual growers. During 1956 the fertilizer was paid for out of each farmer's budget account. However, all of the 1957 accounts were not paid, and plaintiff brought this action against defendant to recover the unpaid balance. Plaintiff predicates its right to recover the sale price of the fertilizer from defendant Gin upon two theories, first, that Carr was acting as defendant's agent in the operation of the fertilizer business and, second, that defendant, by permitting Carr to act as its general manager and at the same time operate a fertilizer business from the gin office, misled plaintiff into believing that the fertilizer was ordered by Carr for defendant.

If, as plaintiff contends, it had no notice that Carr was operating his own business while acting as agent for defendant, thereby inducing plaintiff to rely on defendant's credit in shipping the fertilizer, defendant would then be estopped from denying that Carr was ostensibly its agent. (*Safeway Stores, Inc.* v. *King Lumber Co.*, 45 Cal.App.2d 17 [113 P.2d 483].) The record reflects, however, that during the period covered by the business transactions involved herein, plaintiff was represented by one De Gregory as a sales representative in the area. Carr testified that he explained to De Gregory that he was general manager of defendant Gin, and at the same time acting as an independent fertilizer dealer. Plaintiff attacks Carr's credibility, but the trial court is the judge of the credibility of witnesses. Unless testimony is inherently improbable (and Carr's was not), a

reviewing court may not reverse the finding of the trial court as to the credibility of the witnesses. This is so even though a contrary inference might be drawn from the record. (*La Jolla Casa deManana* v. *Hopkins,* 98 Cal.App.2d 339, 346 [219 P.2d 871] ; *Garcia & Maggini Co.* v. *Sanfilippo,* 56 Cal.App. 348, 352 [208 P. 74].) ▮ Then, too, the testimony of Carr was corroborated for the most part by plaintiff's agent, Mr. De Gregory, who testified as follows:

"Q. Now at that time you knew that Elmer Carr was operating a Welcome Supply Company, did you not? A. Not right at the beginning. Later on, I did.

"Q. Within a couple of months, anyway? A. Yes.

"Q. So by June of 1956, at the latest, you knew Elmer Carr was operating a fertilizer business as Welcome Supply Company? A. Probably sometime in that neighborhood. I couldn't say as to date.

"Q. And I take it you discussed it with him and you knew that that was a separate operation from the Welcome Growers Gin? A. Yes.

"Q. And you knew he was operating that on his own? A. Yes."

The substance of the foregoing testimony was repeated by De Gregory upon two other occasions during the trial.

Conceding that the evidence concerning plaintiff's knowledge of Carr's dual capacity, that is, agent for defendant and independent operator, was conflicting, it is not our province to weigh the conflicting evidence. There is evidence of a substantial nature which supports the implied finding that appellant had notice of Carr's dual capacity. (*Berniker* v. *Berniker,* 30 Cal.2d 439, 444 [182 P.2d 557] ; *Overton* v. *Vita-Food Corp.,* 94 Cal.App.2d 367, 370 [210 P.2d 757].)

▮ Knowledge acquired by an agent while acting within the course and scope of his employment is chargeable to his principal, his employer. Civil Code section 2332 provides:

"NOTICE TO AGENT, WHEN NOTICE TO PRINCIPAL. As against a principal, both principal and agent are deemed to have notice of whatever either has notice of, and ought, in good faith and the exercise of ordinary care and diligence, to communicate to the other."

▮ Thus, plaintiff was chargeable with De Gregory's knowledge that the fertilizer business being operated by Carr was a separate operation from the defendant's gin management, and that Carr, insofar as the fertilizer business was

concerned was not acting as the servant, agent or employee of defendant Gin.

Whether the facts known to the agent were communicated to his principal, to be specific, whether De Gregory communicated to plaintiff what he knew about Carr's dual capacity, is immaterial since the law charges the principal with knowledge acquired by his agent in the course and scope of the agency. (*Mack* v. *Department of Alcoholic Beverage Control*, 178 Cal.App.2d 149, 153 [2 Cal.Rptr. 629]; *Maron* v. *Swig*, 115 Cal.App.2d 87, 90 [251 P.2d 770]; *Hellar* v. *Bianco*, 111 Cal.App.2d 424, 427 [244 P.2d 757, 28 A.L.R.2d 1451]; 2 Cal.Jur.2d 855, 857.)

Plaintiff makes the further contention that defendant Gin is liable by reason of the manner in which it financed the purchase of fertilizer for its growers. The Gin budgeted the production costs of its growers, apparently using some form of crop lien as security. Fertilizer was one item of expense budgeted, and the fertilizer sold the first year by Carr to growers was paid by defendant Gin out of the particular grower's budget account. Plaintiff makes the sweeping statement that because of this method of payment "There can be no other inference from such payment than respondent's adoption of Carr-Supply's purchases as its own." Many agencies, among them gins, packing houses and processing plants, advance funds to their farmer members or customers for the purpose of producing a crop. That fact alone does not make the loaning agency liable for the farmers' bills. As heretofore pointed out, the court impliedly found that the sales were made to Carr as an individual; that plaintiff's agent knew that Carr was acting for himself and not defendant; and that plaintiff was not misled by Carr's dual capacity. The method of financing the purchase of the fertilizer did not vitiate the notice plaintiff had of Carr's dual status.

Finally, it is contended by plaintiff that by sending statements for the fertilizer to defendant, to which no objection was made, the liability of defendant was established as a matter of law. Apparently the fertilizer sold during 1956 was paid for, but from the record it does not appear to whom plaintiff addressed the statements. Beginning early in 1957, however, plaintiff entered purchases made by Carr on a ledger sheet showing defendant as debtor. These billings were made in plaintiff's San Francisco office. The controller of plaintiff corporation testified that defendant appeared

258

as debtor on the ledger because plaintiff relied upon defendant's credit, not that of Carr or the individual grower. Statements taken from the ledger sheet were addressed and mailed to defendant's gin office. Carr, as manager, received the statements but he did not forward them to defendant's headquarters in Kingsburg. He testified that he retained the statements because they were his bills and for the same reason he did not complain to plaintiff that the statements were erroneously addressed. Plaintiff's agent was aware that Carr was operating the fertilizer business on his own behalf and not as an agent of defendant. Therefore plaintiff cannot claim that it was misled because no complaint was made concerning the statements. The knowledge of De Gregory, its agent, precluded plaintiff from thrusting liability upon defendant by unilateral action.

The judgment is affirmed.

Conley, P. J., and Brown, J., concurred.